63 F.3d 1318
 23 Media L. Rep. 2367
 PENN ADVERTISING OF BALTIMORE, INCORPORATED, Plaintiff-Appellant,
v.
MAYOR AND CITY COUNCIL OF BALTIMORE, A Municipal
Corporation; Kurt L. Schmoke, in his official capacity as
Mayor of Baltimore City; David Tanner, in his official
capacity as the General Superintendent of Zoning
Administration and Enforcement of Baltimore City,
Defendants-Appellees.
The American Advertising Federation; the American
Association of Advertising Agencies; the Association of
National Advertisers, Incorporated; the Outdoor Advertising
Association of America, Incorporated; Washington Legal
Foundation; the City of Cincinnati, Ohio; the Maryland
Congress of Parents & Teachers, Incorporated; the Coalition
for Beautiful Neighborhoods; Baltimore City Wide Liquor
Coalition for Better Laws and Regulations; City and County
of San Francisco; City of San Jose, Amici Curiae.
 No. 94-2141.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 6, 1995.
Decided Aug. 31, 1995.
 
 ARGUED: Eric Michael Rubin, Rubin, Winston, Diercks, Harris & Cooke, Washington, DC, for appellant. Burton Harry Levin, Assistant Solicitor, Baltimore, MD, for appellees. ON BRIEF: Walter E. Diercks, Jeffrey Harris, Rubin, Winston, Diercks, Harris & Cooke, Washington, DC, for appellant. Neal M. Janey, City Solicitor, Sandra R. Gutman, Associate Solicitor, Department of Law, Baltimore, MD, for appellees. Richard E. Wiley, Lawrence W. Secrest, III, Daniel E. Troy, Luis de la Torre, Frank Winston, Jr., Wiley, Rein & Fielding, Washington, DC, for amici curiae American Advertising Federation, et al. Mark S. Yurick, Senior Assistant City Solicitor, Office of the City Solicitor, Cincinnati, OH, for amicus curiae City of Cincinnati. Daniel J. Popeo, Richard A. Samp, Washington Legal Foundation, Washington, DC, for amicus curiae Washington Legal Foundation. Donald Garner, Professor of Law, Southern Illinois University, Carbondale, IL; the Maryland Congress of Parents & Teachers, Inc., Baltimore, MD, for amicus curiae Maryland Congress. Christopher J. Fritz, Julie Ellen Squire, Thomas C. Dame, Gallagher, Evelius & Jones, Baltimore, MD, for amici curiae Coalition for Beautiful Neighborhoods, et al. Louise H. Renne, City Attorney, Dannis Aftergut, Chief Assistant City Attorney, Barbara Solomon, Deputy City Attorney, John Cooper, Deputy City Attorney, San Francisco, CA, for amicus curiae San Francisco; Joan Gallo, City Attorney, George Rios, Assistant City Attorney, San Jose, CA, for amicus curiae San Jose.
 Before NIEMEYER and HAMILTON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge HAMILTON and Senior Judge BUTZNER joined.
 OPINION
 NIEMEYER, Circuit Judge:
 
 
 1
 We must decide in this case (1) whether Ordinance 307 enacted by the Mayor and City Council of Baltimore, Maryland, prohibiting the placement of stationary, outdoor "advertising that advertises cigarettes" in certain areas of the City, is preempted by the Federal Cigarette Labeling and Advertising Act or by Maryland statutes prohibiting the sale of cigarettes to minors or the possession of cigarettes by minors; and (2) whether that ordinance violates the First and Fourteenth Amendment protections of commercial speech. The district court, granting Baltimore's motion for summary judgment, ruled that neither federal nor state law preempts the operation of Baltimore's ordinance and that the ordinance is a permissible regulation of commercial speech under the four-part test announced in Central Hudson Gas and Elec. Corp. v. Public Serv. Comm'n of N.Y., 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). We affirm.
 
 
 2
 * Even before 1994, it was illegal in Maryland for any person to purchase cigarettes for, or sell them to, "any individual under the age of 18 years." Md.Ann.Code art. 27, Sec. 404 (1992). In 1994, Maryland also enacted statutes, effective October 1, 1994, prohibiting minors from using or possessing "any tobacco product." Md.Ann.Code art. 27, Secs. 404 & 405A (Supp.1994). A few months earlier, in April 1994, the Mayor and City Council of Baltimore (collectively "Baltimore"), in a further effort to reduce the illegal consumption of cigarettes by minors, enacted Ordinance 307. The ordinance prohibits the placement of any sign that "advertises cigarettes in a publicly visible location," i.e. on "outdoor billboards, sides of building[s], and free standing signboards."[1] The prohibition contained in Ordinance 307 parallels the scope and language of Baltimore City Ordinance 288, enacted in January 1994, which regulates the advertising of alcoholic beverages. Thus, the prohibition against cigarette advertising in Ordinance 307 mirrors Ordinance 288's exceptions permitting such advertising on buses, taxicabs, commercial vehicles used to transport cigarettes, and signs at businesses licensed to sell cigarettes, including professional sports stadiums. As with Ordinance 288, Ordinance 307 also contains an exception permitting such advertising in certain commercially and industrially zoned areas of the City.
 
 
 3
 Before enacting the ordinance, the Baltimore City Council conducted public hearings, receiving testimony and previously-conducted studies detailing the correlation between cigarette advertising and the consumption of cigarettes by minors. The City Council found, as expressed in the preamble to Ordinance 307, that cigarettes are the most heavily advertised product in America and that "there is specific and convincing evidence that tobacco advertising plays a significant role in stimulating illegal consumption of cigarettes by minors." It referred specifically to 10 studies and articles supporting that position. The City Council also relied on the 1992 Maryland Adolescent Drug Survey conducted by the Maryland Department of Education to support its conclusion that cigarettes are the second most commonly abused substance by Maryland adolescents, with approximately 42% of twelfth graders and 11% of sixth graders having smoked cigarettes in the previous 12 months. The City Council emphasized further that 75% of twelfth graders had smoked cigarettes before the age of 15. It noted that cigarettes constitute a "gateway drug" for Maryland students, as they are often the first drug used by adolescents and "appear[ ] to 'open the door' for use of other harder drugs at a later date." Therefore, to reduce the illegal consumption of cigarettes by minors, the City Council concluded that it would be reasonable to restrict the placement of publicly visible cigarette advertisements in the City.
 
 
 4
 On April 6, 1994, the date on which Ordinance 307 became effective, Penn Advertising of Baltimore, Inc., filed suit in federal court to enjoin the ordinance's enforcement and to obtain a declaratory judgment (1) that the ordinance is preempted by Sec. 5(b) of the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. Sec. 1334(b), and by Maryland statutes regulating the sale of cigarettes, and (2) that the ordinance violates the First and Fourteenth Amendments. Penn Advertising, which leases land from private property owners, maintains outdoor signs on those locations, and rents them to its customers, filed suit to protect its business of placing cigarette advertisements on outdoor signs located in Baltimore.
 
 
 5
 With its complaint, Penn Advertising filed a motion for a preliminary injunction to enjoin, pending litigation, enforcement of Ordinance 307. In response, Baltimore filed a motion to dismiss or, in the alternative, for summary judgment. While Penn Advertising obtained some discovery following the filing of these motions, it desired to conduct more discovery and thus filed a motion to extend the time to file its opposition to Baltimore's summary judgment motion. The district court denied the motion and established a briefing schedule for the parties. The court also entered an order staying enforcement of the ordinance.
 
 
 6
 On August 15, 1994, the district court filed a memorandum opinion granting Baltimore's motion for summary judgment. The district court concluded that Ordinance 307 is preempted neither by the Federal Cigarette Labeling and Advertising Act nor by Maryland state law. On the First Amendment issue, the court concluded that Ordinance 307 satisfied all four prongs of the Central Hudson test and was thus a permissible regulation of commercial speech. This appeal followed.[2]
 
 II
 
 7
 We address first a preliminary contention that the district court abused its discretion in refusing to extend Penn Advertising's time to conduct discovery and respond to Baltimore's motion for summary judgment. Penn Advertising argues that the court granted summary judgment "before there had even been adequate time for Penn Advertising to assemble a full evidentiary record and after denying Penn Advertising's motion for leave to take discovery for the purpose of further establishing the disputed factual record."
 
 
 8
 While the district court granted Penn Advertising a short extension to respond to the motion for summary judgment, it did not generally open up the case for discovery before ruling on the issues. It concluded that such discovery was not necessary in view of the nature of the issues presented. The district court stated that the questions presented are "legal questions ripe for decision" because the case concerns "a facial attack on the legal sufficiency of an ordinance." Penn Advertising of Baltimore, Inc. v. Mayor and City Council of Baltimore, 862 F.Supp. 1402, 1405 (D.Md.1994). Penn Advertising nonetheless was able to oppose the motion for summary judgment with affidavits, various studies, and samples of advertising, and has failed to identify any further materials or theories which it desired, but was unable, to present to the district court.
 
 
 9
 We agree that the issues presented to the district court were questions of law which could be resolved without further development of the factual record. The preemption issue rests on a legal interpretation of the federal statute which allegedly preempts the ordinance. As the Supreme Court noted in Cipollone v. Liggett Group, Inc., 505 U.S. 504, 517, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992), "the pre-emptive scope of the 1965 Act and the 1969 Act is governed entirely by the express language in Sec. 5 of each Act." Our interpretation of the instant issue as involving solely a question of law is also consistent with the procedural posture of the Cipollone case before the Supreme Court, i.e. on review of a motion under Federal Rule of Civil Procedure 12(f) to strike the preemption defense as a matter of law.
 
 
 10
 Furthermore, we agree with the district court that a facial challenge to an ordinance restricting commercial speech may be resolved as a question of law when the government meets the burden placed on it by Central Hudson. We decided the same question in the companion case of Anheuser-Busch, Inc. v. Schmoke, 63 F.3d 1305 (4th Cir.1995), where we stated:
 
 
 11
 [I]n response to a facial challenge to a regulation of commercial speech, the burden falls on the government to justify its legislative action, but it does not demand that the government canvass every conceivable situation in which some member of the public may be affected atypically by the statute. And the court's inquiry is limited to consideration of the ordinance on its face against the background of the government's objective and the prospect of the ordinance's general effect. If it appears to the court that the legislative body could reasonably have believed, based on data, studies, history, or common sense, that the legislation would directly advance a substantial governmental interest, the government's burden of justifying it is met.
 
 
 12
 63 F.3d at 1311. The determinative question in reviewing a facial challenge to an ordinance thus is whether the legislative body acted with the objectively reasonable belief that the means it selected fit the objective sought. The issue is not whether the substantive findings on which it relied are incontrovertibly true. As we explained in Anheuser-Busch:
 
 
 13
 While a party [facially] challenging an ordinance can point to other factors not considered by the legislature to demonstrate that the legislature acted irrationally, it cannot subject legislative findings themselves to judicial review under a clearly erroneous standard or otherwise. To do so would ignore the structural separation between legislative bodies and courts and would improperly subordinate one branch to the other.
 
 
 14
 63 F.3d at 1312.
 
 
 15
 Since the burden of justifying the ordinance falls on the government and it may carry this burden by pointing to legislative facts, studies, history, or common sense, an understanding of the ordinance's factual impact on particular parties is not necessary to the inquiry. Id., 63 F.3d at 1311-12. Accordingly, we conclude that the district court did not abuse its discretion in this case by ruling on the summary judgment motion without allowing further discovery.
 
 III
 
 16
 Penn Advertising contends that Ordinance 307 is void because Baltimore's authority to enact such a measure was preempted by Sec. 5(b) of the Federal Cigarette Labeling and Advertising Act, which provides:
 
 
 17
 No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.
 
 
 18
 15 U.S.C. Sec. 1334(b). That Act mandates that one of several specified warning messages be placed on each package of cigarettes and prohibits cigarette advertising on television and radio. See 15 U.S.C. Secs. 1331-1340. Penn Advertising argues that since Ordinance 307's prohibition of cigarette advertising is "based on smoking and health," it is preempted by the federal statute. Its argument rests entirely on the analysis of Sec. 5(b) of the federal act conducted by the Supreme Court in Cipollone v. Liggett Group, Inc.
 
 
 19
 The lawsuit in Cipollone was predicated on the smoking-related death of Rose Cipollone, who began smoking in 1942 and died of lung cancer in 1984. Her son sought damages from cigarette manufacturers, contending that cigarette smoke caused his mother's death. His suit, based on New Jersey common law, alleged common law claims involving design defects; failure to warn; breach of express warranty; fraudulent misrepresentation; conspiracy to defraud; and negligence in the manner in which cigarettes were tested, researched, sold, promoted and advertised. On the cigarette manufacturers' contention that Cipollone's claims were preempted by the Federal Cigarette Labeling and Advertising Act, the Supreme Court held:
 
 
 20
 [T]he 1969 Act pre-empts petitioner's claims based on a failure to warn and the neutralization of federally mandated warnings to the extent that those claims rely on omissions or inclusions in respondents' advertising or promotions; the 1969 Act does not pre-empt petitioner's claims based on express warranty, intentional fraud and misrepresentation, or conspiracy.
 
 
 21
 505 U.S. at 530-31, 112 S.Ct. at 2625. To reach this conclusion, the Court conducted a count-by-count analysis of the common law claims to determine whether each claim implicated duties to warn or to label in connection with smoking and health. The Court explained:
 
 
 22
 [W]e must fairly but--in light of the strong presumption against pre-emption--narrowly construe the precise language of Sec. 5(b) and we must look to each of petitioner's common law claims to determine whether it is in fact preempted.
 
 
 23
 Id. at 523, 112 S.Ct. at 2621. To sort out those claims that were preempted, the Court stated:
 
 
 24
 The central inquiry in each case is straightforward: we ask whether the legal duty that is the predicate of the common law damages action constitutes a "requirement or prohibition based on smoking and health ... imposed under state law with respect to ... advertising or promotion," giving that clause a fair but narrow reading.
 
 
 25
 Id. at 523-24, 112 S.Ct. at 2621 (emphasis added). The Court went on to clarify that the appropriate inquiry is "not whether a claim challenges the 'propriety' of advertising and promotion, but whether the claim would require the imposition under state law of a requirement or prohibition based on smoking and health with respect to advertising or promotion." Id. at 525, 112 S.Ct. at 2622. See also Vango Media, Inc. v. City of New York, 34 F.3d 68, 73-74 (2d Cir.1994) (holding that Federal Cigarette Labeling and Advertising Act preempts ordinance requiring city-licensed facilities to display one message addressing the dangers of smoking for every four tobacco advertisements displayed).
 
 
 26
 Applying the methodology described in Cipollone to Ordinance 307, we conclude that the Federal Cigarette Labeling and Advertising Act does not preempt the ordinance. Ordinance 307 limits only the location of signs that advertise cigarettes, but it does not address the content of such advertisements. The ordinance neither imposes a duty nor relieves a burden on cigarette advertisers based on smoking and health. Moreover, the ordinance does not limit the ability of cigarette manufacturers to advertise generally in the media. The regulation simply restricts the location of cigarette-advertising signs, irrespective of the nature of the message communicated. A regulation with such a general relationship to cigarette smoking--in contrast to a specific advertising "prohibition based on smoking and health"--is not preempted by the Federal Cigarette Labeling and Advertising Act. Were the preemption provision to be interpreted so broadly, the Supreme Court in Cipollone could not have allowed the continued prosecution of common law claims for breach of express warranty, misrepresentation, intentional fraud, and conspiracy--all of which relate generally to the effects on health of promoting the sale of cigarettes. See Cipollone, 505 U.S. at 523-31, 112 S.Ct. at 2621-25.
 
 
 27
 For similar reasons, we conclude that the Maryland statutes prohibiting the sale of cigarettes to minors and the use and possession of cigarettes by minors, see, e.g., Md.Ann.Code art. 27, Secs. 404 & 405A (supp.1994), and Md.Ann.Code, Business Regulation art., Sec. 16-101 et seq., do not preempt the City's ordinance. Penn Advertising argues that Ordinance 307 is invalid because it impliedly was preempted by these state statutes under the doctrine of "preemption by implication" set forth in Allied Vending, Inc. v. Bowie, 332 Md. 279, 631 A.2d 77 (1993). The court in Allied Vending explained that there may be times when " 'the legislature may so forcibly express its intent to occupy a specific field of regulation that the acceptance of the doctrine of preemption by occupation is compelled.' " Id. at 298, 631 A.2d 77 (quoting Mayor and City Council of Baltimore v. Sitnick, 254 Md. 303, 323, 255 A.2d 376 (1969)). The reasoning of Allied Vending, however, lends little support to Penn Advertising's claim. We can find nothing in Secs. 404 and 405A of Article 27 or Sec. 16-101 et seq. of the Business Regulation Article that indicates an attempt by the Maryland legislature to preempt the field of cigarette advertising. Moreover, Ordinance 307, which only limits the place and manner of cigarette advertising, is not in conflict with the state provisions prohibiting their sale to minors. For the reasons stated above, as well as those articulated by the district court in its well-reasoned opinion, see Penn Advertising, 862 F.Supp. at 1415-20, we reject the contention that Ordinance 307 is preempted and therefore null and void.
 
 IV
 
 28
 Finally, Penn Advertising contends that Ordinance 307 is an impermissible regulation of commercial speech under the four-prong scheme announced in Central Hudson. As that case explains, in order for commercial speech to be entitled to any First Amendment protection, the speech must first concern lawful activity and not be misleading. See Central Hudson, 447 U.S. at 563, 100 S.Ct. at 2350. If the commercial speech meets those threshold criteria, a state may nevertheless regulate it if (2) the state is able to assert a substantial interest in support of the regulation; (3) the state demonstrates that the regulation "directly advances the governmental interest asserted"; and (4) the regulation is not "more extensive than is necessary" to serve the interest. Id. at 566, 100 S.Ct. at 2351.
 
 
 29
 The governmental interest asserted in this case is to promote compliance with the state prohibition of the sale of cigarettes to minors. The district court concluded that the ordinance also furthers the obvious public policy underlying such a prohibition, "which is to prevent the purchase, and thus the consumption, of cigarettes by minors." Penn Advertising, 862 F.Supp. at 1406. In the context of the current public concern over the dangers of cigarette consumption by minors, there can be little opposition to the assertion that the City's objective in reducing cigarette consumption by minors constitutes a substantial public interest.
 
 
 30
 The principal dispute in this case centers on Central Hudson's third and fourth prongs which question whether Ordinance 307 directly advances Baltimore's stated public interest in reducing minors' cigarette consumption and whether the ordinance is not more extensive than necessary to serve that interest, i.e. whether it is "narrowly drawn." The inquiry under these two prongs of Central Hudson involves consideration of the "fit" between the City's ends and the means chosen to accomplish them. See United States v. Edge Broadcasting Co., --- U.S. ----, ----, 113 S.Ct. 2696, 2705, 125 L.Ed.2d 345 (1993); Posadas de Puerto Rico Assocs. v. Tourism Co., 478 U.S. 328, 341, 106 S.Ct. 2968, 2976, 92 L.Ed.2d 266 (1986).
 
 
 31
 These same issues were resolved in favor of Baltimore in the related case of Anheuser-Busch, Inc. v. Schmoke, 63 F.3d 1305 (4th Cir.1995). In Anheuser-Busch, the City relied on numerous studies that linked alcohol advertising to underage drinking to meet Central Hudson's third prong. In response to Anheuser-Busch's challenge to those conclusions, we stated:
 
 
 32
 There is a logical nexus between the City's objective and the means it selected for achieving that objective, and it is not necessary, in satisfying Central Hudson's third prong, to prove conclusively that the correlation in fact exists, or that the steps undertaken will solve the problem. If that were required, communities could never initiate even minor steps to address their problems, for they could never be assured of the success of their efforts. The proper standard for approval must involve an assessment of the reasonableness of the legislature's belief that the means it selected will advance its ends. Under that approach, we conclude that Baltimore has met its burden of satisfying the third prong of Central Hudson.
 
 
 33
 63 F.3d at 1314. Similarly, in our examination of whether the advertising regulation was narrowly tailored to meet Central Hudson's fourth prong, we concluded in Anheuser-Busch:
 
 
 34
 If there were some less restrictive means of screening outdoor advertising from minors, or of reducing the area of billboard regulation in a manner that would have it focus more efficiently on reaching minors, the City would have to consider those alternatives. But it is not an acceptable response to the approach taken by the City of limiting advertising exposure to say that the City must abandon altogether an approach that directly advances its goal. In the face of a problem as significant as that which the City seeks to address, the City must be given some reasonable latitude.
 
 
 35
 63 F.3d at 1316.
 
 
 36
 For the reasons advanced in Anheuser-Busch, we conclude here that, while the fit between the City's objectives and the means selected to achieve them may not be perfect, it nevertheless falls well within the range tolerated by the First Amendment for the regulation of commercial speech.
 
 
 37
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 38
 AFFIRMED.
 
 
 
 [1]
 The core provision of Ordinance 307 provides:
 Cigarette advertisements. No person may place any sign, poster, placard, device, graphic display, or other form of advertising that advertises cigarettes in a publicly visible location. In this section "publicly visible location" includes outdoor billboards, sides of building[s], and free standing signboards.
 Baltimore City Code, Art. 30 (zoning), Sec. 10.0-1(I). By its terms, the ordinance became effective April 6, 1994.
 
 
 [2]
 Amici curiae briefs were received in this appeal from the American Advertising Federation, the American Association of Advertising Agencies, the Association of National Advertisers, Inc., the Outdoor Advertising Association of America, Inc., the Washington Legal Foundation, the Maryland Congress of Parents & Teachers, Inc., the Coalition for Beautiful Neighborhoods, the Baltimore City Wide Liquor Coalition for Better Laws and Regulations, the City of Cincinnati, the City and County of San Francisco, and the City of San Jose