Mrs. Binh CHIGLO;  J & B, Inc., a Minnesota corporation, d/b/a Citgo One Stop; and Mary Moore, Plaintiffs,

v.

The CITY OF PRESTON, MINNESOTA, a municipal corporation, Defendant.

Civil No. 3–94–1540.

United States District Court,
D. Minnesota,
Third Division.

Nov. 13, 1995.

Gary Van Cleve, James Philip Larkin, Larkin Hoffman Daly & Lindgren, Bloomington, MN, for Binh Chiglo, J & B, Inc. and Mary Moore.

Jon K. Iverson, Paul D. Reuvers, Erstad & Riemer, Minneapolis, MN, for City of Preston.

Gary D. Ansel, Gina M. Steele, Reinhardt & Anderson, St. Paul, MN, for Minnesota Civil Liberties Union, amicus.

Richard B. Bates, Bates Law Office, St. Paul, MN, for Mike Sveen, Steve Corson, Brent Larson and Jeff Fleming.

### MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

This matter is before the Court on the Cross Summary Judgment Motions of Plaintiffs and Defendant. For the following reasons, Plaintiffs' Motion for Summary Judgment is granted.

### I. BACKGROUND

Plaintiff Chiglo operates a "Citgo One Stop" convenience store and gasoline station

in the City of Preston, Minnesota. Plaintiff Moore is a resident of Preston, Minnesota, and an employee of J & B, Inc., the owner of the convenience store. Plaintiff Chiglo is the sole shareholder of J & B, Inc. Plaintiff Chiglo sells tobacco products at her store and, until the passage of the Preston ordinance, had numerous in-store advertisements for cigarettes, including a garbage can/ashtray bearing a large brand logo, a signboard listing types of cigarettes and prices, an Open/Closed sign bearing a brand name, promotional merchandise and catalogs, and a large sign in the window spelling the word "CIGARETTES."

On May 13, 1994, Defendant City of Preston, Minnesota, adopted an "Ordinance Regulating Certain Advertising of Tobacco Products" ("Ordinance 213"). Ordinance 213 prohibited all "point of sale" advertising in retail establishments. The ordinance covered promotional materials as well as trademarks and logos associated with certain brands. The statute permitted stores to display two 8½ x 14 inch signs stating that tobacco products were for sale. The signs could only bear black letters less than one inch in size. In June, 1995, Defendant amended Ordinance 213 to permit generic signs for both the interior and exterior of stores, indicating that cigarettes or other tobacco products were sold on premises. The statute continued to prohibit the display of brand names, trademarks, or logos. However, the two 8½ x 14 inch signs could bear information about "tar" and nicotine content of the products as well as their price.

After passage of the ordinance, Plaintiff removed some in-store advertising, but left in place the garbage can bearing a brand logo, several brand-name stickers attached to the door buzzer, and the large "CIGARETTES" sign in the window. Defendant City of Preston sent Plaintiff Chiglo a letter requesting that these advertisements be removed. Defendant advised Plaintiff Chiglo that it would take legal action against her if she continued to display advertisements. Plaintiffs brought this action challenging the legality of the ordinance. Plaintiffs challenge the City statute on two separate grounds: 1) the ordinance is preempted by federal law and; 2)

the ordinance violates Plaintiffs' rights to free speech under the First Amendment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.*, 980 F.2d 1217, 1219–20 (8th Cir.1992). As the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555. The Court will grant summary judgment if, "viewing the evidence in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences to be drawn from that evidence, the movant is entitled to judgment as a matter of law." *Arthur Young & Co. v. Reves*, 937 F.2d 1310, 1324 (8th Cir.1991).

## III. DISCUSSION

The Constitution provides that "[t]his Constitution, and the Laws of the United States ... made in Pursuance thereof; ... shall be the supreme Law of the Land; any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Federal law may explicitly preempt state law, *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977), or constructively preempt state law if there is a conflict between state and federal law, *Pacific Gas & Elec. Co. v. Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983). Courts should only find that state law is preempted where Congress has made it clear that preemption was intended. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 515–16, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). However, the expansive nature of a statutory scheme may indicate that Congress intended federal law to assume a prominent and exclusive role. *Id.*

Plaintiffs argue that Ordinance 213 is preempted by the federal statutory scheme which regulates advertising related to the health effects of smoking and tobacco products. In 15 U.S.C. § 1334(b), the Federal Cigarette Labeling and Advertising Act ("FCLAA"), Congress provided that:

[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarette the packages of which are labeled in conformity with the provisions of this chapter.

Congress considered two goals when adopting this statute. First, Congress hoped to provide warning labels sufficient to inform the public of the health risks of smoking. 15 U.S.C. § 1331(1). Congress also sought to provide such warnings while avoiding numerous confusing and possibly conflicting state regulations. 15 U.S.C. § 1331(2). In adopting this statutory scheme, Congress intended its provisions to prevail over any state laws regulating cigarette advertising based on health-related concerns. *Cipollone,* 505 U.S. at 515–16, 112 S.Ct. at 2617.

In *Cipollone,* the Supreme Court found that the FCLAA preempted certain common law claims against tobacco companies based on failure to warn and misrepresentation. The Court found that the federal scheme created the exclusive duties on the part of tobacco companies to warn consumers of health risks. *Id.* If tobacco companies complied with the federal scheme, state common law claims based on misleading or insufficient warnings were precluded. *Id.* In deciding the issue, the Court recognized that the FCLAA was intended to preempt state legal actions—both statutory and common law. *Id.* at 521, 112 S.Ct. at 2620 ("The phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law.")

While *Cipollone* addressed the general principles underlying the statute, few courts have dealt with the effect of the FCLAA on the type of advertising restriction at issue in this case. Plaintiffs cite a federal case from Massachusetts in which the court issued a temporary restraining order prohibiting the enforcement of a municipal ordinance which prohibited cigarette advertising within the city. In considering whether to grant the injunction, the court found that the advertising restrictions were preempted by the FCLAA. *Kishan Corporation v. Board of Health,* Civ. Action No. 94–12283 RCL (D.Mass. Nov. 22, 1994); *see also DC & L Corp. v. Board of Health,* Civ. Action No. 94–122553 RGS (D.Mass. Jan. 10, 1995).

Plaintiffs also cite to *Vango Media, Inc. v. City of New York,* 34 F.3d 68 (2d Cir.1994). At issue in *Vango* was a New York City ordinance that required cab companies to display one advertisement warning of the health risks of tobacco for every four promotional advertisements they displayed on their cabs. The "declaration" section of the New York regulation stated that its purpose was to reduce the "enormous financial costs to the taxpayers, in the form of health care benefits, and a loss of productivity among the city's workforce." *Id.* at 73. The court found that despite the stated purpose of the statute, courts must look beyond the stated justification to the statute's actual effect. *Id.* (citing *Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 104–05, 112 S.Ct. 2374, 2386, 120 L.Ed.2d 73 (1992)). The court noted that other language in the statute detailed the health risks of smoking. The court found that the statute dealt with an area of health-related concerns already occupied by the FCLAA and was preempted. *Id.*

Defendants rely on *Penn Advertising of Baltimore, Inc. v. Mayor & City Council of Baltimore,* 63 F.3d 1318 (4th Cir.1995), in which the City of Baltimore enacted an ordinance prohibiting billboard advertisements of tobacco products in certain residential neighborhoods. In affirming the decision of the district court, the Fourth Circuit found that the ordinance was directed at reducing the amount of smoking by minors, rather than attempting to regulate the health effects of tobacco products. *Id.* at 1324–25. The court found that reducing unlawful activity—underage smoking—was a legitimate goal for the ordinance, regardless of any health benefits that might accrue. *Id.* The Court also found that the ordinance did not regulate the

content of tobacco advertisements, only their location.

[T]he ordinance does not limit the ability of cigarette manufacturers to advertise generally in advertising signs, irrespective of the nature of the message communicated. A regulation with such a general relationship to cigarette smoking—in contrast to a specific advertising 'prohibition based on smoking and health'—is not preempted by the Federal Cigarette Labeling and Advertising Act.

*Id.*

Unlike the regulation at issue in *Penn,* Ordinance 213 regulates the content of advertisements. Plaintiffs can display signs advertising tobacco products, but such signs can only contain certain designated pieces of information. Plaintiff can only display signs 8½ x 14 inches in size. The ordinance does not permit any logos, cartoon characters, or any distinctive brand advertising to appear on the signs. Such a regulation goes beyond the location prohibitions at issue in *Penn.* The ordinance discussed in *Penn* directed tobacco billboards, regardless of their content, away from residential neighborhoods. Ordinance 213 regulates to minute detail, the content and appearance of all retail store signs that relate to tobacco products.

It is also apparent that these content restrictions are designed to address health concerns. Section 1 of Defendant's Ordinance 213 states that the City of Preston:

7) believes that restricting point-of-sale advertising at retail outlets will decrease the risks posed by tobacco products to persons under the age of 18;

8) believes that it is the duty of the City Council to take reasonable steps to protect the well being of persons under the age of 18.

Ordinance 213 indicates that reducing underage smoking is one of its goals. However, this Court adopts the approach of the Second Circuit in *Vango* and finds that merely having one permissible goal cannot remedy a statute that has at its basis, a goal of reducing the health effects of smoking. *See Vango,* 34 F.3d at 73. This Court finds that Ordinance 213 is preempted by the Federal Cigarette Labeling and Advertising Act. Be-

cause this Court finds that Ordinance 213 is preempted, it does not reach Plaintiffs' First Amendment claims.

Accordingly, **IT IS HEREBY ORDERED THAT:**

Plaintiffs' Motion for Summary Judgment (Clerk Doc. No. 7), is GRANTED.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**