**LORILLARD TOBACCO CO., R.J. Reynolds Tobacco Co., Philip Morris Inc., Brown & Williamson Tobacco Corp., and United States Tobacco Co., Plaintiffs,**

v.

**Thomas REILLY, in his official capacity as Attorney General of Massachusetts, Defendant.**

**No. Civ.A. 99–11118–WGY.**

United States District Court,
D. Massachusetts.

Dec. 2, 1999.

Richard M. Zielinski, Robert D. Ryan, C. Dylan Sanders, Hill & Barlow, Boston, MA, Clausen Ely, Jr., Patricia A. Barald, David H. Remes, Covington & Burling, Washington, DC, for Lorillard Tobacco Company.

Verne W. Vance, Jr., Foley, Hoag & Eliot, Boston, MA, Andrew S. Krulwich, Daniel E. Troy, Thomas W. Kirby, William A. McGrath, Wiley, Rein & Fielding, Washington, DC, for Brown & Williamson Tobacco Corporation.

Richard M. Zielinski, Hill & Barlow, Boston, MA, Clausen Ely, Jr., Patricia A. Barald, David H. Remes, Covington & Burling, Washington, DC, John B. Connarton, Jr., Connarton, Wood & Callahan, Boston, MA, for R.J. Reynolds Tobacco Company.

Henry C. Dinger, Cerise H. Lim–Epstein, Richard D. Hosp, Goodwin, Procter & Hoar, Boston, MA, for Philip Morris, Inc.

George J. Skelly, Skadden, Arps, Slate, Meagher & Flom, Boston, MA, for United States Tobacco Company.

James V. Kearney, Christopher R. Harris, Latham & Watkins, New York City, Peter G. Hermes, Hermes, Netburn, O'Connor & Spearing, P.C., Boston, MA, Peter C. Netburn, Hermes, Netburn, O'Connor & Spearing, P.C., Boston, MA, for Consolidated Cigar Corporation.

George J. Skelly, Skadden, Arps, Slate, Meagher & Flom, Boston, MA, James V. Kearney, Christopher R. Harris, Latham & Watkins, New York City, Peter C. Netburn, Peter G. Hermes, Hermes, Netburn, O'Connor & Spearing, P.C., Boston, MA, for General Cigar Co., Inc., Havatampa, Inc., John Middleton, Inc., L.J. Peretti Co., Inc., Swedish Match North America, Inc., Swisher International, Inc., Tobacco Exporters International (USA) Ltd.

William T. Matlack, Assistant Atty. General, Office of the Atty. General, Boston, MA, William W. Porter, Michael G. Hering, Assistant Attorney General, Office of the Attorney General, Boston, MA, for Thomas Reilly, Attorney General of the Commonwealth of Massachusetts.

Jeffrey B. Chasnow, U.S. Department of Justice, Office of Consumer Litigation, Washington, DC, for United States of America.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

### I.  INTRODUCTION

Although admittedly addictive, *see* Philip Morris, Cigarette Smoking: Health Issues for Smokers (visited Nov. 16, 1999) <http://www.philipmorris.com/tobacco_bus/t                 obacco_issues/health_issues.html> ("Cigarette smoking is addictive, as that term is most commonly used today."), cigarette smoking is an entirely

lawful activity for adult Americans. Congress' efforts to regulate the tobacco industry are candid half-measures, seeking both to confront the public health impact of smoking by weaning the public away from its addiction to cigarettes and, at the same time, to preserve an important industry until foreign outlets can be found for its products. *Cf.* Susan M. Marsh, *U.S. Tobacco Exports: Toward Monitoring and Regulation Consistent with Acknowledged Health Risks,* 15 Wis. Int'l L.J. 29 (1996); Andrea J. Hageman, *U.S. Tobacco Exports: The Dichotomy Between Trade and Health Policies,* 1 Minn.J. Global Trade 175 (1992); National Security and International Affairs Division, U.S. General Accounting Office, Report to Congressional Requestors: Trade and Health Issues: Dichotomy Between U.S. Tobacco Export Policy and Antismoking Initiatives (1990). The present case tests whether Massachusetts' more aggressive regulation of the tobacco industry comports with the free speech guarantees of the United States Constitution and the governing federal statutes. The particular issue presented by the present motion asks whether a particular federal statute pre-empts, i.e., trumps, a particular regulation of the Massachusetts Attorney General (the "Attorney General").

On January 22, 1999, the Attorney General promulgated regulations (the "Regulations") that render certain types of tobacco product advertising and promotion "unfair or deceptive acts or practices" under Mass.Gen.Laws ch. 93A, § 2(a). *See* Mass.Gen.Laws ch. 93A, § 2(c) (1999). The Regulations, which become effective on February 1, 2000, essentially outlaw (i) advertisements visible from areas likely to be frequented by minors, and (ii) certain

promotional techniques that purportedly invite illegal tobacco use by minors. Several tobacco product manufacturers, namely Lorillard Tobacco Company, R.J. Reynolds Tobacco Company, Philip Morris Incorporated, Brown & Williamson Tobacco Corporation, and United States Tobacco Company (collectively, the "Tobacco Companies"), seek a declaration that the Regulations are pre-empted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 et seq. (the "Act"). Since there are no material facts in dispute concerning this issue, the Tobacco Companies filed the instant motion for summary judgment seeking a declaration that the Regulations are void as matter of law. The Attorney General, in turn, asks for summary judgment declaring that the Regulations are not pre-empted by the Act.[1]

## II. THE REGULATIONS

The Tobacco Companies contest several of the Regulations promulgated by the Attorney General under the title "Sales and Distribution of Cigarettes and Smokeless Tobacco Products in Massachusetts," 940 C.M.R. § 21.00 et seq. The stated purpose of the Regulations, which effectively make certain practices unlawful under Mass.Gen.L. ch. 93A,

> is to eliminate deception and unfairness in the way cigarettes and smokeless tobacco products are marketed, sold and distributed in Massachusetts in order to address the incidence of cigarette smoking and smokeless tobacco use by children under legal age. 940 CMR 21.00 imposes requirements and restrictions on the sale and distribution of cigarettes and smokeless tobacco products in Mas-

1. The Attorney General has not filed a motion for summary judgment. In his opposition, however, he correctly points out that there are no factual issues in dispute and "respectfully requests that the Court both deny the plaintiffs' Motion for Summary Judgment and enter summary judgment for the Attorney General." Def.Opp.Mem. at 4 n. 4. *See National Expositions v. Crowley Maritime Corp.,* 824 F.2d 131, 133 (1st Cir.1987) ("[A] district court has the legal power to render 'summary judgment . . . in favor' of the party opposing a summary judgment motion 'even though he has made no formal cross-motion under rule 56.' " [quoting Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (1983)]).

sachusetts in order to prevent access to such products by underage consumers. 940 C.M.R. § 21.01. Although the Regulations contain a variety of prohibitions, the Tobacco Companies contest only five specific provisions. Together, these provisions outlaw the following three practices:

(1) tobacco product advertising visible from the outdoors located within a 1,000 foot radius of public playgrounds, playground areas in a public park, elementary school or secondary school ("outdoor advertising"), *see id.* § 21.04(5)(a);

(2) point-of-sale tobacco product advertising placed below five feet from the floor in stores accessible to minors within a 1,000 foot radius of public playgrounds, playground areas in a public park, elementary school or secondary school ("ground-level advertising"), *see id.* § 21.04(5)(b); and,

(3) tobacco product promotional techniques such as sampling, promotional give-aways, distribution of tobacco products through the mail, and offering gifts other than tobacco products in consideration of purchase without age verification ("promotional techniques"), *see id.* § 21.04(1)(a), (b), (d).

At the same time, the Tobacco Companies also contest a regulation that permits retailers to "place one sign no larger than 576 square inches and containing only black text on a white background stating 'Tobacco Products Sold Here' on the outside or visible from the outside of each location where such products are offered for sale," ("tombstone advertising"). *Id.* § 21.04(6).

## III. THE ACT

As amended by Congress in 1969, the Act requires federal health warnings to appear in a conspicuous place on every package of cigarettes sold in the United States. *See* 15 U.S.C. § 1331 et seq. Of special relevance here, section 5(b) of the Act includes an express pre-emption provision:

> No *requirement or prohibition based on smoking and health* shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

*Id.* § 1334(b) (emphasis added). Prior to the 1969 amendment, the pre-emption provision stated:

> No *statement relating to smoking and health* shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

15 U.S.C. § 1334 (1965) (emphasis added). The Tobacco Companies argue that the general language used in the current pre-emption provision, as compared to the language of the original provision, demonstrates a Congressional intent to preclude state advertising legislation that is at all related to smoking and health.

## IV. PRE–EMPTION GENERALLY

Under the Supremacy Clause, Art. VI, cl. 2 of the United States Constitution, a state law that conflicts with or violates federal law is without effect. *See McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 427, 4 L.Ed. 579 (1819). Pre-emption analysis, however, "starts with the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981).[2] Accordingly, "the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest

---

**2.** The presumption against pre-emption applies even when analyzing an express pre-emption clause such as section 5 of the Act. *See California Div. of Labor Standards En-* *forcement v. Dillingham Constr.,* 519 U.S. 316, 331–32, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997).

purpose of Congress." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). The "historic police power of the States" includes restrictions on the size and placement of outdoor advertisements. *See St. Louis Poster Adver. Co. v. City of St. Louis*, 249 U.S. 269, 274–275, 39 S.Ct. 274, 63 L.Ed. 599 (1919). Moreover, prior to the passage of the Act, the Supreme Court held a Utah statute banning the outdoor advertisement of cigarettes valid under the police power. *Packer Corp. v. Utah*, 285 U.S. 105, 52 S.Ct. 273, 76 L.Ed. 643 (1932). Accordingly, in determining the outcome of the case at bar, the presumption against pre-emption figures prominently. *See Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 77 (1st Cir.1997) (noting importance of presumption against pre-emption in considering state regulation of tobacco products).

## V. PRE–EMPTIVE EFFECT OF THE ACT

The First Circuit recently stated that the "central inquiry" in determining the pre-emptive scope of the Act is whether or not the "predicate legal duty" created by the Regulations "constitutes a (1) requirement or prohibition ... imposed under state law, (2) based on smoking and health, (3) with respect to the advertising or promotion of any [properly labeled] cigarettes." *Philip Morris*, 122 F.3d at 69–70 (holding that Act did not pre-empt Massachusetts statute requiring tobacco product manufacturers to disclose additives and nicotine-yield ratings of their products to the Commonwealth). As all parties before this Court agree that the Regulations are prohibitions imposed under state law respecting the advertising or promotion of properly labeled cigarettes, the key disputed issue is whether the Regulations *create* a predicate legal duty "based on smoking and health." [3]

## VI. WHAT ARE DUTIES "BASED ON SMOKING AND HEALTH?"

Five Circuit Courts have recently considered what types of state advertising regulations impose duties "based on smoking and health." Most recently, in *Lindsey v. Tacoma–Pierce County Health Dep't*, 195 F.3d 1065 (9th Cir.1999), the Ninth Circuit ruled that a Pierce County resolution that banned outdoor advertising was pre-empted.[4] The Second Circuit, in *Greater New York Metropolitan Food Council, Inc. v. Giuliani*, 195 F.3d 100

**3.** In *Cipollone*, the Supreme Court examined whether various state common law claims asserted by a decedent's estate were preempted by the Act. For each common law claim, the Supreme Court considered whether the "legal duty that is the *predicate* of the common-law damages action" was based on smoking and health. *Cipollone*, 505 U.S. at 524, 112 S.Ct. 2608 (emphasis added). Here, arguing that "[t]he legal duty *underlying* the challenged regulations is the general duty set forth in M.G.L. c. 93A, § 2(a) not to engage in unfair or deceptive acts or practices," Opp. Mem. at 8 (emphasis added), rather than a duty based on smoking and health, the Attorney General attempts to convince the Court to apply the *Cipollone* predicate duty test to hold that the Act does not preempt the Regulations. Although this is an interpretation the First Circuit could have drawn from *Cipollone* in the context of statutory pre-emption, it declined to do so. Instead, when the First Circuit considered whether the Act preempted a tobacco-related state statute, as is basically the issue here, the court chose to "modify" the *Cipollone* test and focus on whether the legal duty *"created by"* or *"imposed"* by the statute was based on smoking and health. *Philip Morris*, 122 F.3d at 70 (emphasis added). Consequently, the extensive back-and-forth between the parties concerning the purpose *underlying* the Regulations is irrelevant. Rather, the somewhat confusing notion of a "predicate" duty created by the Regulations is nothing more than the duty that they impose.

**4.** The resolution considered in *Lindsey* banned all outdoor advertising that could be seen from the street except advertisements presented in a "tombstone format." *Lindsey*, 195 F.3d at 1067. "No tombstone advertisement [could] be displayed, however, if it [were] visible from a school, school bus stop, bus stop, or sidewalk regularly used by minors to get to school or within one thousand feet of a school, playground, or public park." *Id.* at 1067–1068.

(2nd Cir.1999) found some portions of a New York City Local Law prohibiting most outdoor advertising of tobacco products in certain locations pre-empted.[5] In *Federation of Adver. Indus. Representatives, Inc. v. City of Chicago*, 189 F.3d 633 (7th Cir.1999) the Seventh Circuit held not pre-empted under the Act a Chicago municipal ordinance that bans almost all publicly visible cigarette advertising.[6] Similarly, in *Penn Adv. of Baltimore, Inc. v. Mayor and City Council of Baltimore*, 63 F.3d 1318 (4th Cir.1995), *vacated*, 518 U.S. 1030, 116 S.Ct. 2575, 135 L.Ed.2d 1090 (1996), *on remand*, 101 F.3d 332 (4th Cir. 1996), the Fourth Circuit ruled that a Baltimore ordinance prohibiting outdoor cigarette product advertising in certain areas of the city was not pre-empted.[7] By contrast, in *Vango Media, Inc. v. City of New York*, 34 F.3d 68 (1994), the Second Circuit held pre-empted under the Act a New York City ordinance requiring one public health message to be displayed for every four tobacco advertisements displayed on city-licensed property.[8] In resolving the instant case, this Court relies heavily on each decision's analysis.

### A. *Purpose of the Act*

According to the Supreme Court, the pre-emptive scope of the Act "is governed entirely by the express language in § 5[and] there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation." *Cipollone*, 505 U.S. at 517, 112 S.Ct. 2608. If limited to the vague language of section 5(b), i.e., "based on smoking and health," this Court might conclude (as do the Tobacco Companies) that the clause outlaws *any* state law enacted due to "health concerns about smoking." Pl. Mem. at 8. But despite the Supreme Court's mandate to rely "entirely" upon the express language of section 5(b), *Cipollone* proceeded to examine the Act's "structure and purpose" to delineate its pre-emptive impact, emphasizing that the "purpose" of the Act is "the *ultimate* touchstone of preemption analysis." *Cipollone*, 505 U.S. at 516, 112 S.Ct. 2608 (emphasis added). Following the lead of the Supreme Court, the First, Second, and Seventh Circuits have looked beyond the language of section 5(b) and examined other sources to discern the purpose of the Act's pre-emption clause. *See Philip Morris*, 122 F.3d at 77 ("[W]e find the explicit preemption language and legislative history [of the Act] insufficient to clear[ly] and manifest[ly] overcome the presumption against preemption of a state's traditional powers to legislate for the health and safety of its citizens."); *Federation*, 189 F.3d at 637 ("[W]e must examine the congres-

---

5. The New York City Local Law in *Giuliani* prohibited outdoor advertising within one thousand feet of any school building, playground, child day care center, amusement arcade or youth center, or indoor advertising in the same areas if it can be seen from the street. *See Giuliani*, 195 F.3d at 103. "There is one exception to the ban: a single, black-and-white, text-only 'tombstone' sign stating, 'TOBACCO PRODUCTS SOLD HERE,' may be placed within ten feet of an entrance to a store where tobacco products are sold." *Id.*

6. The ordinance considered in *Federation* permitted advertising "near highways ... at certain sports facilities ..., inside stores licensed to sell ... cigarette products ..., on commercial vehicles transporting such products, and signs identifying the premises where such products are sold." *Federation*, 189 F.3d at 634–35.

7. In *Penn Advertising*, the challenged ordinance permitted "such advertising on buses, taxicabs, commercial vehicles used to transport cigarettes, and signs at businesses licensed to sell cigarettes including professional sports stadiums" and contained "an exception permitting such advertising in certain commercially and industrially zoned areas of the City." *Penn Advertising*, 63 F.3d at 1321.

8. The ordinance struck down in *Vango Media* invited the public to submit proposed health messages and required the Department of Health to select for publication, at the expense of tobacco product advertisers, those "it deem[ed] to communicate most effectively the health risks of tobacco product use or the health benefits of not using tobacco products." *Vango Media*, 34 F.3d at 70.

sional scheme and legislative history of § 5[b] in order to determine what Congress meant. . . ."); *Giuliani*, 195 F.3d 100, 106 ("Congress has provided valuable insight into the intended scope of preemption. . . .").

■ There are "two important manifestations of congressional intent that shed light on the scope of § 5(b) preemption. . . ." *Federation*, 189 F.3d at 638. First, specifically with respect to pre-emption, the Act expressly states its purpose is to prevent "diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any *relationship between smoking and health.*" 15 U.S.C. § 1331 (emphasis added). Second, the relevant Senate Report states that section 5(b) is "narrowly phrased" and "in no way affect[s] the power of any State . . . with respect to the taxation or the sale of cigarettes to minors, or the prohibition of smoking in public buildings, or *similar police regulations.*" S.Rep. No. 566, 91st Cong., 2d Sess. (1969), *reprinted in* 1970 U.S.C.C.A.N. 2652, 2663 (emphasis added). The "purpose" and "ultimate touchstone" of section 5(b), therefore, is Congress' desire to prevent states from enacting regulations that create a "danger of interfering with the [Act's] advertising and labeling requirements." *Federation*, 189 F.3d at 639; *see also Vango Media*, 34 F.3d at 74 (recognizing that Act's purpose is "to avoid diverse, non-uniform, and confusing labeling and advertising regulations with respect to any relationship between smoking and health."). Congress simultaneously intended to protect the states' inherent police powers to regulate smoking. *See Philip Morris*, 122 F.3d at 77. Thus, to hold that the Act pre-empts any state advertising regulations enacted due to "health concerns about smoking" would significantly aggrandize Congress' stated purpose in enacting section 5(b) by leaving states essentially powerless in this area. *See Federation*, 189 F.3d at 638 ("Any other approach leads to results that we cannot believe Congress intended.").[9]

### B. Location–Based Restrictions

■ Since the pre-emptive reach of section 5(b) falls short of invalidating *all* state restrictions on tobacco product advertisements, the question becomes "How far short?" The *Giuliani, Federation,* and *Penn Advertising* courts have held that certain location-based restrictions are not "based on smoking and health." *See Giuliani*, 195 F.3d at 108 (upholding portions of local law that "restrict only the physical placement of tobacco advertising signs in a manner akin to a run of the mill zoning regulation"); *Federation*, 189 F.3d at 639 (upholding portion of ordinance that "regulates the location and type of [tobacco product] signs"); *Penn Advertising*, 63 F.3d at 1324 (upholding ordinance that "simply restrict[s] the location of cigarette-advertising signs, irrespective of the nature of the message communicated."). Even though the ordinances upheld in *Gi-*

***

9. The Tobacco Companies contend that the two mentioned indicators of legislative purpose are overshadowed by the following statement made by Senator Magnuson, the Senate manager of the Conference Report, during final Senate floor debate:

> Mr. Cooper: Mr. President, I wish to ask the Senator from Washington, the manager of the report, questions for interpretation. As I understand the conference report, it preempts the States from *any action restricting advertising.*
>
> Mr. Magnuson: *Yes.*

116 Cong.Rec. 6640 (1970) (emphasis added). Although Senator Magnuson's response to a formal request for interpretation should be accorded significant weight, *see* N. Singer, *Sutherland Statutory Construction* § 48.14 (5th ed.1992), this Court refuses to read the simple one-word affirmative reply as suggesting a total prohibition of *any* state restrictions on tobacco product advertisement. Even the Tobacco Companies state that Senator Magnuson's response only "made clear, that [Congress] reserved to the federal government the exclusive authority to regulate cigarette advertising and promotion *based on health concerns about smoking* . . . ," Pl.Mem. at 8 (emphasis added), not "any action restricting advertising." This Court's analysis prescinds from this more narrow interpretation of the Senator's response.

*uliani, Federation,* and *Penn Advertising* focus solely on the advertisement of tobacco products, the courts concluded that allowing states to enact restrictions that are admittedly triggered by the mention of tobacco products, but merely limit location and placement, does not interfere with the federal advertising and labeling scheme concerning the relationship between smoking and health. Likewise in the instant case, although the provisions of the Regulations that outlaw outdoor and ground-level advertising here similarly target only tobacco product advertisements, they do not implicate the relationship between smoking and health. Rather, they "simply restrict the location of cigarette-advertising signs, irrespective of the nature of the message communicated." *Penn Advertising,* 63 F.3d at 1324. Accordingly, this Court holds that the location-based restrictions are not pre-empted by the Act.

### C. Restrictions Relating to Messages About Relationship Between Smoking and Health

■ Like the *Federation* court, the Second Circuit in *Vango Media* recognized that the purpose of Section 5(b) is "to avoid diverse, nonuniform, and confusing labeling and advertising regulations with respect to any relationship between smoking and health." *Vango Media,* 34 F.3d at 74. Adhering to that purpose, the court struck down a municipal ordinance requiring advertisers to carry a specific message about the health benefits of not using tobacco products. *See id.* at 74–75. The court reasoned that the effect of the ordinance "would be to educate the public as to the adverse health risks of smoking ...," *id.* at 73, and resulted in "regulations respecting the relationship between smoking and health," *id.* at 70. *Vango Media* thus stands for the simple proposition that the Act pre-empts state legislation that specifically requires or prevents the advertisement of a message concerning the relationship between smoking and health. According to the purpose of the Act, such legislation is "based on smoking and health." This conclusion is supported most recently by the Second Circuit's decision in *Giuliani* which found pre-empted the tombstone provision of the Local Law at issue. *See Giuliani,* 195 F.3d at 108.

In the case at bar, the only portion of the Regulations that in any way requires or prevents the advertisement of a relationship-based message is the tombstone advertising provision. Although the provision is permissive, where it applies it prevents the Tobacco Companies from carrying any messages whatsoever about the relationship between smoking and health, even those permitted or required under the Act. The Act pre-empts such regulation.

■ Although the Tobacco Companies argue that the tombstone provision thus renders the Regulations invalid in their entirety, this Court does no more than strike out 940 C.M.R. § 21.04(6) according to the Regulations' severability clause, leaving the remaining provisions intact. *See* 940 C.M.R. § 21.06. Like the *Federation* court's consideration of brand-specific advertisement restrictions, this Court concludes that the Office of the Attorney General "would not have regarded the problematic provision as a necessary component of its handiwork." *Federation,* 189 F.3d at 640.

### D. Content–Regulating Restrictions Unrelated to the Relationship Between Smoking and Health

As part of the holding in *Federation,* the Seventh Circuit held pre-empted one provision of the relevant municipal ordinance that "permits advertising, without any location consideration, that is limited to a generic, as opposed to brand-specific, mention of a tobacco product." *Federation,* 189 F.3d at 640. Reasoning that the provision "purports to regulate the content of some advertising without regard to any land-use consideration," the court ruled that that particular aspect of the ordinance "runs squarely into the prohibition of the

current § 5(b)...." *Id.* So too here, argue the Tobacco Companies, pressing for judgment on pre-emption grounds without regard to the more knotty First Amendment issues.

This Court concludes, however, that the express pre-emption issue in *Federation* can be supported, of course, on the ground that the particular aspect of the ordinance there considered prevented advertisers from including required or permitted messages about the relationship between smoking and health. *See* discussion *supra* part VI.C. The purpose of the Act illustrates that section 5(b) pre-empts state legislation that regulates tobacco product advertisements by requiring or restricting the inclusion of content *only* when that regulation concerns the relationship between smoking and health. The fact that a state tobacco advertising regulation has content implications simply does not require the conclusion that it is "based on smoking and health."

■ Unlike the restriction of brand-specific advertising struck down in *Federation*, the challenged provisions in this case that prohibit promotional techniques in the absence of age verification regulate the content of tobacco advertisements [10] in a way that *does not* address the relationship between smoking and health. The provisions instead essentially require the Tobacco Companies to include a message that informs observers that smoking is illegal for minors. Such intervention is permissible under the Commonwealth's police power. *See* discussion *supra* part VI.A. The provisions outlawing minor promotional techniques without age verification are not pre-empted by the Act.

**10.** On their face, the provisions limiting promotional techniques appear to be merely restrictive of location and placement because such techniques are permissible with age verification. In practice, however, the only way to employ these techniques is to include statements in promotional materials that inform consumers about potential age verification. For instance, the only way for one of the Tobacco Companies to distribute cigarettes

## VII. CONCLUSION

■ Section 5(b) of the Act only pre-empts state tobacco advertising regulations that are "based on smoking and health." 15 U.S.C. § 1334(b). Considering the purpose of the Act, a regulation that is "based on smoking and health" is one that concerns the relationship between smoking and health. Thus, the Act pre-empts regulations that require an advertiser to make a statement concerning the relationship between smoking and health, like the ordinance in *Vango Media*, and those that prevent an advertiser from carrying required or permitted health-based statements, like the severed portion of the ordinance in *Federation*. Other state enactments that specifically target tobacco product advertising, even those that regulate content without implicating the relationship between smoking and health, are not "based on smoking and health."

Of the challenged Regulations in the case at bar, only the tombstone provision, 940 C.M.R. § 21.04(6), prevents the Tobacco Companies from making a statement concerning the relationship between smoking and health. Since the Office of the Attorney General would have enacted the remainder of the challenged Regulations even had it known that the tombstone provision was pre-empted, the Court simply severs the objectionable provision in accordance with 940 C.M.R. § 21.06.

The Court therefore GRANTS IN PART the Tobacco Companies' motion for summary judgment by declaring 940 C.M.R. § 21.04(6) preempted under the Act. With respect to the remaining portions of the challenged Regulations, how-

through the mail (one of the practices outlawed by the Regulations) would be to include a message that states, "Age Verification Required," and a description of the verification process. Forcing the Tobacco Companies to include such statements, rather than just limiting the forum in which they can practice certain advertising techniques, thus regulates content.

ever, the Court holds that they are not pre-empted and thus "GRANTS IN PART the Attorney General's cross-motion for summary judgment." [11] These rulings address the narrow issue of federal pre-emption. The Court, in making these rulings, intends no intimation whatsoever concerning the First Amendment issues presented in this case.

---

11. United States Tobacco Company ("U.S.Tobacco,"), a manufacturer of smokeless tobacco, argues in a separate motion for summary judgment that the Regulations, as they apply to smokeless tobacco, are not severable from the allegedly preempted cigarette provisions. With respect to those provisions of the Regulations that the Court holds not pre-empted under the Act, the question of severability raised in U.S. Tobacco's motion need not be reached. As for the severability of the pre-empted tombstone provision, the Court agrees with U.S. Tobacco "that the Regulations apply indistinguishably to cigarettes and smokeless tobacco...." U.S. Tobacco Mem. at 1. Accordingly, with respect to smokeless tobacco products, the Court GRANTS IN PART U.S. Tobacco's motion for summary judgment declaring 940 C.M.R. § 21.04(6) pre-empted.