195 F.3d 100 (2nd Cir. 1999)
 THE GREATER NEW YORK METROPOLITAN FOOD COUNCIL, INC., THE ADVERTISING FREEDOM COALITION and THE ADVERTISING CLUB OF NEW YORK, INC., Plaintiffs-Appellees,
v.
RUDOLPH W. GIULIANI, in his official capacity as Mayor of the City of New York, THE CITY OF NEW YORK, GASTON SILVA, in his official capacity as Commissioner of the New York City Department of Buildings and ALFRED C. CERULLO, III, in his official capacity as Commissioner of the New York City Department of Finance, Defendants-Appellants.
 Docket No. 99-7006
August Term 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: September 7, 1999
Decided: October 25, 1999
 
 Appeal from a judgment of the United States District Court for the Southern District of New York (Batts, J.), enjoining the enforcement of a New York City ordinance, the "Youth Protection against Tobacco Advertising and Promotion Act," and declaring the ordinance preempted under the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. 1331, et seq., and the Supremacy Clause of the United States Constitution.
 AFFIRMED in part, REVERSED in part, and REMANDED.[Copyrighted Material Omitted][Copyrighted Material Omitted]
 FLOYD ABRAMS, Cahill Gordon & Reindel, New York, NY (Jonathan Donnellan, Joel Kurtzberg, Matthew A. Leish, Cahill Gordon & Reindel, Howard B. Tisch, Greater New York Metropolitan Food Council, Inc., on the brief), for Plaintiffs-Appellees.
 ELIZABETH S. NATRELLA, Corporation Counsel's Office, City of New York, New York, NY (Michael D. Hess, Corporation Counsel, Leonard J. Koerner, and Deborah Rand, on the brief), for Defendants-Appellants.
 GIDEON A. SCHOR, United States Attorney's Office for the Southern District of New York, New York, NY, argued and jointly submitted a brief with DOUGLAS N. LETTER, United States Department of Justice, Washington, DC, (with Mary Jo White, United States Attorney for the Southern District of New York, David W. Ogden, Acting Assistant Attorney General, and William B. Schultz, Deputy Assistant Attorney General, on the brief), for amicus curiae, United States of America.
 ELIOT D. PRESCOTT and JANE R. ROSENBERG, Assistant Attorneys General, Attorney General's Office, State of Connecticut, Hartford, CT, submitted a brief for amicus curiae, State of Connecticut.
 DONALD W. GARNER, Pepperdine University Law School, Malibu, CA, submitted a brief for amici curiae, American Medical Association, American Heart Association, American Lung Association, American Cancer Society, Center for Science in the Public Interest, Public Citizen, Inc., Medical Society of the State of New York, Protect Our Youth, New York Public Interest Research Group, Project Friend, League of Women Voters of New York State, Campaign for Tobacco-Free Kids, The Diocese of Brooklyn Drug Prevention Program, Smokefree Educational Services, Inc., New York State Occupational Therapy Association, Coalition for Smokefree Harlem, The Heart of Harlem Cardiovascular Disease Prevention Program, Boriken Neighborhood Health Center, Bushwick Community Service Society, New York County Medical Society, Unidos Coalition, New Jersey Gasp, Alliance for Smoke-Free Air, Montefiore Medical Center/Albert Einstein Cancer Center.
 ARTHUR N. EISENBERG, New York Civil Liberties Union, New York, NY submitted a brief for amicus curiae, New York Civil Liberties Union.
 RICHARD A. SAMP and DANIEL J. POPEO, Washington Legal Foundation, Washington, DC submitted a brief for amicus curiae, Washington Legal Foundation.
 Before: McLAUGHLIN, CALABRESI, SOTOMAYOR, Circuit Judges.
 McLAUGHLIN, Circuit Judge:
 
 BACKGROUND
 
 1
 This appeal stirs up a volatile mix of anti-tobacco legislation, federal preemption and First Amendment limitations upon commercial speech.
 
 
 2
 In early 1998, New York City enacted Local Law No. 3. It is entitled the "Youth Protection Against Tobacco Advertising and Promotion Act," and is codified as Article 17A to Title 27, Chapter 1, subchapter 7, of the New York City Administrative Code 27508.1 to 27-508.6 ("Article 17-A"). Article 17-A prohibits most outdoor advertising of tobacco products (other than tobacco advertisements on motor vehicles) within one thousand feet of any school building, playground, child day care center, amusement arcade or youth center. It also prohibits most indoor advertising in the same areas if the advertisements can be seen from the street. There is one exception to the ban: a single, black-and-white, text-only "tombstone" sign stating, "TOBACCO PRODUCTS SOLD HERE," may be placed within ten feet of an entrance to a store where tobacco products are sold.
 
 
 3
 Section 1 of Local Law 3 contains a "Declaration of legislative findings and intent." According to the Declaration, Article 17-A's purpose is "to strengthen compliance with and enforcement of laws prohibiting the sale or distribution of tobacco products to children and to protect children against such illegal sales."
 
 
 4
 Article 17-A also contains a severability clause, stating that if any portion of the ordinance should be found invalid, this will not affect the remaining portions.
 
 
 5
 On the day that Mayor Giuliani signed Article 17-A into law, the plaintiffs, various supermarket and advertising associations (collectively, the "Advertisers") brought this 1983 action against New York City, Mayor Giuliani, and two other city officials responsible for enforcing Article 17-A (collectively, the "City") in the United States District Court for the Southern District of New York (Batts, J.). The Amended Complaint seeks declaratory and injunctive relief. It alleges that: (1) Article 17-A is preempted by the Federal Cigarette Labeling and Advertising Act ("FCLAA"), 15 U.S.C. 1331, et seq. (1994), and therefore violates the Supremacy Clause of the United States Constitution; and (2) Article 17-A unconstitutionally restricts commercial speech in violation of the First Amendment. After some discovery, all parties moved for summary judgment.
 
 
 6
 Relying heavily on Vango Media, Inc. v. City of New York, 34 F.3d 68 (2d Cir. 1994), the district court found that Article 17-A was preempted by the FCLAA's preemption provision: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." 15 U.S.C. 1334(b).
 
 
 7
 Noting that 1334(b) applies to laws of political subdivisions, as well as states, see id. 1332(3), the district court found that the express language of the preemption provision embraced Article 17-A. The court rejected the City's argument that it should look to congressional intent to determine the preemptive scope of the provision. The district court found no need to examine congressional intent "in light of the fact that both the Supreme Court and the Second Circuit have directed that reliance on the express preemption provision is appropriate." Accordingly, the court awarded the Advertisers summary judgment and permanently enjoined the enforcement of Article 17-A. The district court did not reach the Advertisers' First Amendment claim.
 
 
 8
 The City now appeals. Several amici curiae have weighed in on both sides of the dispute.
 
 DISCUSSION
 
 9
 We review a district court's award of summary judgment de novo, drawing all inferences and resolving all ambiguities in favor of the nonmoving party. See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997). Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).
 
 I. Preemption
 
 10
 We are asked to determine whether and to what extent Article 17-A is preempted by the FCLAA. The district court concluded that the FCLAA preempted Article 17-A in its entirety. We conclude, however, that the FCLAA only partially preempts Article 17-A. While the ordinance's "tombstone" provision is preempted, the restrictions on advertising within a thousand feet of a school or playground, etc., may stand.
 
 A. Preemption Principles
 
 11
 The Constitution directs that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Under the doctrine of preemption, a corollary to the Supremacy Clause, any state or municipal law that is inconsistent with federal law is without effect. See M'Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 427 (1819). Federal law may preempt state and municipal law expressly or impliedly. See, e.g., Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n, 461 U.S. 190, 203-204 (1983). Where, as here, a statute expressly preempts state law, our task is to "identify the domain expressly pre-empted." Cipollone v. Liggett Group, Inc., 505 U.S. 504, 517 (1992).
 
 
 12
 As the Supreme Court has recently emphasized, we must read express preemption provisions in light of two well settled principles. First, our interpretation of the provision is guided by the principle that "the purpose of Congress is the ultimate touchstone in every pre-emption case," Medtronic v. Lohr, 518 U.S. 470, 485 (1996) (citation and internal quotations and alteration omitted); and we discern congressional intent not only from the language of the preemption statute, but also from the statutory framework surrounding the provision, the "structure and purpose of the statute as a whole," and our "reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." Id. at 486 (internal quotations omitted). Second, because of federalism concerns, we must interpret Congress's intent strictly, beginning with the presumption that Congress did not intend to displace state law. See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654 (1995). Accordingly, we will not find preemption "unless that was the clear and manifest purpose of Congress." Medtronic, 518 U.S. at 485 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).
 
 B. The Preemptive Scope of the FCLAA
 
 13
 We start with the FCLAA's preemption language: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." 15 U.S.C. 1334(b). Unhappily, this text provides little insight into the preemptive scope intended by Congress. The ambiguity resides primarily in the open-ended language extending preemption to obligations "with respect to" advertising and promotion of cigarettes. Read literally, these words could be misunderstood to preempt every conceivable obligation having a relationship - however evanescent - to the advertising and promotion of cigarettes. But this hyper-literal approach would yield results that Congress surely did not intend. To take an absurd example, it could divest states and municipalities of authority to prevent tobacco advertisers from posting their ads in public buildings even though smoking is legally prohibited there. Or to borrow another example mentioned by our sister circuit, it could lead to the conclusion that "states [are] without power to prohibit a cigarette company from handing out free cigarettes in an elementary school yard." Federation of Advertising Indus. Representatives, Inc. v. City of Chicago, Nos. 98-3191, 99-1115 & 99-1516, 189 F.3d 633, (7th Cir. Sept. 1, 1999).
 
 
 14
 We decline to read 1334(b) so crudely. As Judge Learned Hand has cautioned, "[t]here is no more likely way to misapprehend the meaning of language - be it in a constitution, a statute, a will or a contract - than to read the words literally, forgetting the object which the document as a whole is meant to secure." Central Hanover Bank & Trust Co. v. Commissioner, 159 F.2d 167, 169 (2d Cir. 1947). And this is especially true in the preemption context, where "the purpose of Congress is the ultimate touchstone," and an overly-expansive, literal interpretation could subvert the presumption against preemption. The Supreme Court recently cautioned against "uncritical literalism" when interpreting similarly open-ended language in the express preemption provision of another federal statute. Travelers Ins., 514 U.S. at 656 (interpreting the Employee Retirement Income Security Act's preemption provision, which extended to state laws that "relate to" any employee benefit plan). And while our analysis of 1334(b) must perforce begin with its text, "our interpretation of that language does not occur in a contextual vacuum." Medtronic, 518 U.S. at 485.
 
 
 15
 Relying on our decision in Vango Media, the district court refused to look beyond the language of 1334(b) or even to consider congressional intent. Vango Media, however, should not be read to "make a fortress out of the dictionary." Cabell v. Markham, 148 F.2d 737, 739 (2d Cir.) (Learned Hand, J.), aff'd, 326 U.S. 404 (1945). It is not without significance that, while our analysis of 1334(b)'s preemptive scope in Vango Media began with the language of the provision, see Vango Media, 34 F.3d at 72-74, we also went further to consider the stated purpose of the federal act, its historical context, and its legislative history. See id. at 74-75. And while we noted that 1334(b)'s "with respect to" language connotes a potentially expansive preemptive scope, see id. at 73-74, we gave effect to that language only because we found that doing so would implement congressional intent. See id. at 74. Thus, our "touchstone" remained the legislative purpose underlying 1334(b), as discerned not only from the language of that provision, but also from other indicia of congressional intent. We adhere to that approach.
 
 
 16
 Felicitously, Congress has provided valuable insight into the intended scope of preemption under the FCLAA:
 
 
 17
 It is the policy of the Congress, and the purpose of this chapter, to establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health, whereby
 
 
 18
 (1) the public may be adequately informed about any adverse health effects of cigarette smoking by inclusion of warning notices on each package of cigarettes and in each advertisement of cigarettes; and
 
 
 19
 (2) commerce and the national economy may be (A) protected to the maximum extent consistent with this declared policy and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.
 
 
 20
 15 U.S.C. 1331.
 
 
 21
 Two conclusions emerge when this statement is read in conjunction with the FCLAA's other provisions. First, Congress sought to inform the public about the health dangers of smoking by regulating advertising and labeling information. See id. 1333 (detailing content and format requirements for health warnings on cigarette packages, advertisements, and billboards). Second, recognizing the potential burdens on the national economy that might result from the proliferation of "diverse, nonuniform, and confusing" advertising standards, Congress reserved to itself the power to regulate cigarette advertising information. See id. 1334(b) (prohibiting regulations "with respect to" cigarette advertising). As the legislative history confirms, preemption was needed "to avoid the chaos created by a multiplicity of conflicting regulations." S. Rep. No. 91-566 (1969), reprinted in 1970 U.S.C.C.A.N. 2652, 2663.
 
 
 22
 We must therefore read 1334(b) in light of: (1) Congress's "comprehensive Federal program" to control cigarette advertising information; and (2) its concomitant concern with avoiding "diverse, nonuniform, and confusing" advertising standards. 15 U.S.C. 1331. This is the same approach we took in Vango Media. There, we held that a New York City ordinance requiring advertisers to display one anti-smoking public health message for every four tobacco advertisements displayed on New York City taxi cabs was preempted under 1334(b). SeeVango Media, 34 F.3d at 70. By requiring advertisers to display certain messages about smoking and health (other than those required by the FCLAA), the ordinance risked creating nonuniformity with Congress's federally mandated warning scheme. Accordingly, we found that the ordinance imposed a requirement "with respect to advertising" within the meaning of 1334(b). It obstructed Congress' federal scheme to regulate advertising information and risked creating the sort of "diverse, nonuniform, and confusing" standards that Congress wanted to avoid. Id. at 74. Noting the laudable goal of informing the public, through advertising, about the health dangers of smoking, we nevertheless held that the means chosen violated the preemption provision which Congress had enacted "in an effort to avoid the chaos of multiple diverse regulations." Id. at 70.
 
 
 23
 This approach tracks the Supreme Court's interpretation of 1334(b) in Cipollone. Although the Court could not garner a majority to agree on how 1334(b) should be applied in that case itself, a majority of the justices did focus their respective analyses on Congress's stated intent to avoid "diverse, nonuniform, and confusing" advertising standards. See Cipollone, 505 U.S. at 529 (plurality opinion) (explaining that while failure to warn claims (which were preempted) involve "'diverse, nonuniform, and confusing' standards," intentional fraud claims (which were not preempted) do not); see id. at 541 (Blackmun, J., concurring in part and dissenting in part) (criticizing the plurality for failing to follow consistently Congress's stated purpose of avoiding "diverse, nonuniform, and confusing regulations").
 
 
 24
 With this understanding of congressional purpose as our "touchstone," we next turn to Article 17-A, bearing in mind, of course, the presumption against preemption. See Cipollone, 505 U.S. at 518.
 
 C.Article 17-A: The Tombstone Provision
 
 25
 One provision of Article 17-A clearly presents problems similar to the ordinance in Vango Media. Specifically, the tombstone provision limits advertising information in the restricted areas to black-and-white signs stating "TOBACCO PRODUCTS SOLD HERE;" colors, nontextual images, and non-conforming messages are prohibited. Like the ordinance in Vango Media, the tombstone provision thus creates obligations directly pertaining to the nature and content of advertising information. This risks the sort of "diverse, nonuniform, and confusing" advertising standards that Congress expressly sought to avoid. Congress could not have intended to let municipalities promulgate their own unique regulations governing the content and format of cigarette advertising information. See Phillip Morris Inc. v. Harshbarger, 122 F.3d 58, 76 (1st Cir. 1997) (noting that "a quintessential state requirement 'with respect to advertising and promotion' would be a law mandating changes or additions to the content of cigarette advertisements") (alteration omitted). Accordingly, we conclude that Article 17-A's tombstone provision is a regulation "with respect to" advertising within the meaning of 1334(b).
 
 
 26
 The City nevertheless contends that the tombstone provision is not preempted by 1334(b). The City makes two arguments. Neither is persuasive.
 
 
 27
 First, the City asserts that the tombstone provision is not a "requirement or prohibition" within the meaning of 1334(b) because it is permissive, rather than mandatory. We disagree. Although the tombstone provision is "permissive" in the literal sense that an advertiser is not "required" to post a tombstone sign at all, this does not meaningfully distinguish it from the "requirement" we found preempted in Vango Media. That ordinance was similarly "permissive" in that it did not require advertisers to display ads. But if they chose to do so, they had to comply with certain conditions, namely, the posting of a certain number of anti-smoking public health messages. It is clear that this sort of "permissiveness" - vaguely reminiscent of Hobson's choice - is not dispositive. We find that the tombstone provision imposes a "requirement or prohibition" within the meaning of 1334(b); it is a "positive enactment" of a political subdivision that "imposes conditions on [the] display of cigarette advertisements." Vango Media, 34 F.3d at 72, 75.
 
 
 28
 Second, the City makes the startling contention that the tombstone provision - and indeed, the entirety of Article 17-A - is not "based on smoking and health" within the meaning of 1334(b), but is instead aimed solely at promoting law enforcement. For support, the City points to the "Declaration of legislative findings and intent," which announces that the purpose of the ordinance is: "to strengthen compliance with and enforcement of laws prohibiting the sale or distribution of tobacco products to children and to protect children against such illegal sales." We are unpersuaded by this sophistry.
 
 
 29
 We do not blindly accept the articulated purpose of an ordinance for preemption purposes. See Vango Media, 34 F.3d at 73. If that were the rule, legislatures could "nullify nearly all unwanted federal legislation by simply publishing a legislative committee report articulating some state interest or policy - other than frustration of the federal objective - that would be tangentially furthered by the proposed state law." Gade v. National Solid Wastes Management Assoc., 505 U.S. 88, 106 (1992) (quoting Perez v. Campbell, 402 U.S. 637, 651-52 (1971)). That the City Council drafted a declaration of intent that recites a law enforcement goal while scrupulously avoiding any mention of the word "health" simply cannot control our preemption analysis. Instead, we follow Vango Media and consider both the purpose of the ordinance as a whole, and the ordinance's actual effect, to determine whether it is "based on smoking and health." See Vango Media, 34 F.3d at 73 (citing Gade, 505 U.S. 88).
 
 
 30
 The Vango Media analysis makes clear that Article 17-A is indeed "based on smoking and health." We agree with the district court that the legislative history of the ordinance is "replete" with references to the twin purposes of promoting "health" and combating the dangers of smoking.[1] Moreover, the effect of Article 17-A is clearly to promote health because the underage tobacco sales prohibitions whose enforcement it explicitly seeks to promote are inherently based on health concerns.
 
 
 31
 We find that Article 17-A's tombstone provision is a "requirement . . .based on smoking and health . . . with respect to advertising or promotion of cigarettes." Accordingly, it is preempted under 1334(b). We therefore affirm that part of the district court's judgment holding that this portion of Article 17-A was preempted.
 
 
 32
 D. Article 17-A: The 1000-Foot Verboten Zone
 
 
 33
 We reach a different conclusion as to the remaining provisions of Article 17-A, which essentially regulate the physical placement of advertising. As to these provisions, we join the only two federal courts of appeals that have addressed 1334(b)'s effect on similar laws and hold that they are not preempted. See Federation of Advertising Indus. Representatives, Inc. v. City of Chicago, Nos. 98-3191, 99-1115 & 99-1516, 189 F.3d 633, (7th Cir. Sept. 1, 1999); Penn Advertising of Baltimore, Inc. v. Mayor of Baltimore, 63 F.3d 1318 (4th Cir. 1995), vacated and remanded on other grounds, 518 U.S. 1030 (1996), readopted as modified on remand, 101 F.3d 332 (4th Cir. 1996)). Specifically, we find that these location restrictions do not impose obligations "with respect to" advertising as that phrase is used in 1334(b).
 
 
 34
 Article 17-A's location restrictions do not implicate the same concerns as the ordinance's tombstone provision or the ordinance in Vango Media. The location restrictions do not touch upon Congress's "comprehensive Federal program" to control cigarette advertising information. The restrictions do not, for example, burden advertisers with a duty to warn. Nor do they impose content and format requirements on advertising information.
 
 
 35
 Instead, those provisions restrict only the physical placement of tobacco advertising signs in a manner akin to a run of the mill zoning regulation. To be sure, Article 17-A's restrictions are unusual in that they ban only signs advertising tobacco, and not other products.[2] However, this disparity does not interfere with the congressional purpose underlying the FCLAA. We do not see - and the Advertisers do not explain - how mere location restrictions can lead to the sort of "diverse, nonuniform, and confusing" advertising standards that Congress sought to avoid when it enacted 1334(b). See Plumbing Indus. Bd., Plumbing Local Union No. 1 v. E.W. Howell Co., 126 F.3d 61, 67 (2d Cir. 1997) (discussing ERISA's preemption provision and stating that "a party challenging a statute must convince a court that there is something in the practical operation" of the statute to show that it is the type of law that Congress wanted to preempt). Divergent local zoning restrictions on the location of sign advertising are a commonplace feature of the national landscape and cigarette advertisers have always been bound to observe them. Thus, with or without Article 17-A, a cigarette advertiser will still have to ascertain where it can permissibly advertise in light of diverse local zoning ordinances. And no party suggests that such zoning regulations fall within the intended purview of 1334(b). We see no reason to treat the location restrictions before us any differently.
 
 
 36
 We also note that the presumption against preemption is particularly strong here, as these provisions are the sort thought to lie within the heartland of the states' historic police powers. See Medtronic, 518 U.S. at 485. Zoning regulations on the placement of outdoor advertisements have long been held to lie peculiarly within the states' historic police powers. See Packer Corp. v. Utah, 285 U.S. 105, 111 (1932) (upholding a Utah statute banning outdoor advertisements of cigarettes and describing it as a "wholly intrastate" prohibition); see also Federation of Advertising, 189 F.3d 639 (citing cases). So too, regulations directed at the safety and welfare of children "lie[] at the heart of the states' police powers." Toy Mfrs. of America, Inc. v. Blumenthal, 986 F.2d 615, 620 (2d Cir. 1992). Article 17-A's location restrictions embody both of these intensely local areas of regulation. Although Congress can choose to preempt such state police power regulations if its intent to do so is "clear and manifest," Vango Media, 34 F.3d at 72 (quoting Cipollone, 505 U.S. at 516) (internal quotations omitted), we find no such clear intent here. To the contrary, the legislative history of 1334(b) suggests that Congress wanted to give such regulations a wide berth. See S. Rep. No. 91-566, reprinted in 1970 U.S.C.C.A.N. at 2663 (noting that 1334(b) is "narrowly phrased" and "would in no way affect [local power] with respect to the taxation or the sale of cigarettes to minors, or the prohibition of smoking in public buildings, or similar police regulations" (emphasis added)).
 
 A. Severability
 
 37
 In light of our determination that only the tombstone provision is preempted by the FCLAA, we must determine whether that provision is severable from the remaining portions of the ordinance. Severability questions are governed by state law. See Environmental Encapsulating Corp. v. City of New York, 855 F.2d 48, 60 (2d Cir. 1988). In New York, the test for severability is "whether the Legislature 'would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether.'" See In re New York State Superfund Coalition, Inc. v. New York State Dep't of Envtl. Conservation, 75 N.Y.2d 88, 94, 550 N.E.2d 155, 157, 550 N.Y.S.2d 879, 881 (N.Y. 1989) (quoting People ex rel. Alpha Portland Cement Co. v. Knapp, 230 N.Y. 48, 60, 129 N.E. 202, 207 (N.Y. 1920)).
 
 
 38
 We find that the tombstone provision is indeed severable from the rest of Article 17-A. That the City Council would have wished the bulk of Article 17-A to be upheld despite the invalidity of the tombstone provision seems beyond doubt. Severance of the tombstone provision would not, in our view, significantly interfere with the central thrust of Article 17-A - to limit cigarette advertising in areas where young people are likely to congregate. This conclusion is reinforced by the City Council's inclusion of an express severability clause indicating its general desire to salvage any valid portions of the ordinance in the event that another portion is adjudged invalid. See National Adver. Co. v. Town of Niagara, 942 F.2d 145, 148 (2d Cir. 1991) (New York law) (noting that "[t]he preference for severance is particularly strong when the law contains a severability clause").
 
 
 39
 We conclude, therefore, that while the tombstone provision of Article 17-A is preempted by 1334(b), the remaining provisions of the ordinance are valid and enforceable.
 
 II. First Amendment
 
 40
 The parties urge us to decide whether Article 17-A unduly restricts commercial speech in violation of the First Amendment. However, because the district court granted summary judgment to the Advertisers on preemption grounds alone, it did not pass upon the merits of the First Amendment claim. In our view, the district court should have the opportunity to consider this issue in the first instance. See Sullivan v. Syracuse Hous. Auth., 962 F.2d 1101, 1110 (2d Cir. 1992). We remand so that it may do so.
 
 CONCLUSION
 
 41
 We have considered the parties' remaining contentions and find them to be without merit. Accordingly, we AFFIRM the judgment of the district court insofar as it held that the tombstone provision of Article 17-A is preempted under the FCLAA, REVERSE insofar as it held that the remaining provisions of Article 17-A are preempted, and REMAND for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The Health Committee of the City Council convened on several occasions to consider health-related concerns. The first speaker at the first such meeting, for instance, endorsed the ordinance specifically because "children's lives are at risk." Speaker Peter Vallone, the primary sponsor of the law, himself detailed the health risks of smoking and later urged that "the health and safety of our kids just can't wait." Another City Council member was just as emphatic that "it is a health issue, period." We note also that the law itself provides extensive discussion of the disturbing rise in teen smoking, attributed in part to a proliferation of ads portraying smoking as "safe and healthful."
 
 
 [2]
 We express no opinion whether this targeting of tobacco advertising runs afoul of the First Amendment. See infra at Section II. In this discussion, we conclude only that New York City's regulation of ad placement is not preempted under the FCLAA.