**THE FILLING STATION, INC., Bill's, World, Inc., Bradley Alan Joslin, Inc., and Beck's Oil Company of Illinois, Plaintiffs,**

v.

**Thomas VILSACK, in his official capacity as Governor of the State of Iowa, and Stephen C. Gleason, in his official capacity as Director of the Iowa Department of Public Health, Defendants.**

No. 4–00–CV–90271.

United States District Court,
S.D. Iowa,
Central Division.

April 16, 2001.

Steven L. Nelson, Des Moines, Iowa, for plaintiffs.

Dennis W. Johnson, Des Moines, Iowa, for Defendants.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

This lawsuit is about the constitutionality of Iowa Code § 142A.6(6), which prohibits "[a] manufacturer, distributor, wholesaler, retailer, or distributing agent or agent thereof" from giving away "cigarettes or tobacco products" or providing "free articles, products, commodities, gifts, or concessions in any exchange for the purchase of cigarettes or tobacco products." The Plaintiffs in this case are retailers who hold permits to sell tobacco products in the State of Iowa. They sued Defendants, Thomas Vilsack, the Governor of Iowa, and Stephen Gleason, the Director of the Iowa Public Health Department, to have § 142A.6(6) declared null and void and to keep them from enforcing or taking any action under it. In their Complaint, Plaintiffs contend that § 142A.6(6)(a) is preempted by the Federal Cigarette Labeling and Advertising Act ("FCLAA"), 15 U.S.C. § 1331 *et seq.*, (2) violates their First Amendment rights, (3) violates their rights under the Equal Protection and Due Process Clauses, and (4) violates federally protected rights that they may assert under 42 U.S.C. § 1983. The lawsuit is now before the Court on Plaintiffs' motion for summary judgment on their preemption and First Amendment claims and Defendants' motion for summary judgment on all of Plaintiffs' claims.[1] Finding no real factual dispute, the Court holds that § 142A.6(6) is preempted by the FCLAA.

## I. BACKGROUND

The FCLAA governs what tobacco companies must do and must not do in their effort to sell cigarettes to the public. The stated purpose of the FCLAA is as follows:

It is the policy of the Congress, and the purpose of this chapter, to establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health, whereby—

(1) the public may be adequately informed about any adverse health effects of cigarette smoking by inclusion of warning notices on each package of cigarettes and in each advertisement of cigarettes; and

(2) commerce and the national economy may be (A) protected to the maximum extent consistent with this declared policy and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising reg-

---

1. Plaintiffs filed a motion for partial summary judgment on their preemption claim only. Defendants filed a motion for summary judgment on all of Plaintiffs' claims. In response to Defendants' motion, Plaintiffs requested summary judgment on their First Amendment claim in addition to their preemption claim.

ulations with respect to any relationship between smoking and health.

15 U.S.C. § 1331. In furtherance of this purpose, the FCLAA mandates a Surgeon General's Warning[2] on cigarette packages, advertisements, and outdoor billboards, and it prohibits advertising "cigarettes and little cigars on any medium of electronic communication subject to the jurisdiction of the Federal Communications Commission." 15 U.S.C. §§ 1333, 1335.

The FCLAA also establishes systems of reporting information about the tobacco industry to Congress and a program designed to inform the public about the dangers of smoking. In one system of reporting, it requires persons who manufacture, package, or import cigarettes to annually provide a list of ingredients, anonymously, to the Secretary of Health and Human Services who then reports to Congress. 15 U.S.C. § 1335a. In another system of reporting, it requires the Federal Trade Commission (FTC) to report to Congress on "(1) current practices and methods of cigarette advertising and promotion, and (2) such recommendations for legislation as it may deem appropriate." 15 U.S.C. § 1337. In an effort to educate the public about the dangers of smoking, the FCLAA provides that the Secretary of Health and Human Services shall establish a program and it creates an interagency committee to help carry out that program. 15 U.S.C. § 1341.

The FCLAA then, in turn, protects the tobacco industry from further requirements or regulations:

(a) Additional statements

No statement relating to smoking and health, other than the statement required by section 1333 of this title, shall be required on any cigarette package.

(b) State regulations

No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

15 U.S.C. § 1334. The scope of this pre-emption provision is at the heart of the dispute here. More specifically, the debate is over the reach of the word "promotion."

The Iowa act in question, enacted May 15, 2000, is without title but described as "relating to tobacco use prevention and control." Iowa House File 2565, to be codified as Iowa Code § 142A.1 *et seq.* ("Iowa Code § 142A.1 *et seq.*" or the "Iowa Act"). The disputed section, § 142A.6(6), states, in relevant part, as follows:

a. A manufacturer, distributor, wholesaler, retailer, or distributing agent or agent thereof shall not give away cigarettes or tobacco products.

b. A manufacturer, distributor, wholesaler, retailer, or distributing agent or agent thereof shall not provide free articles, products, commodities, gifts, or concessions in any exchange for the purchase of cigarettes or tobacco products.

At the hearing on this matter, the Attorney General's office informed the Court that it had agreed not to enforce

---

**2.** The warnings, which are to be rotated, are as follows: "Smoking Causes Lung Cancer, Heart Disease, Emphysema, And May Complicate Pregnancy," "Quitting Smoking Now Greatly Reduces Serious Risks to Your Health," "Smoking By Pregnant Women May Result in Fetal Injury, Premature Birth, And

Low Birth Weight" (but on outdoor billboards it must read, "Pregnant Women Who Smoke Risk Fetal Injury and Premature Birth"), and "Cigarette Smoke Contains Carbon Monoxide." 15 U.S.C. § 1333. The FCLAA also provides for the location, type style, and format of the warnings. *Id.*

§ 142A.6(6) until the Court ruled on whether it is constitutional.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is "genuine," "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if the dispute over it might affect the outcome of the suit under the governing law. *Id.* Demonstrating the absence of a genuine issue of material fact is the burden of the moving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

## III. DISCUSSION

The Supremacy Clause of the United States Constitution provides that the laws of the United States are "the supreme Law of the Land" and that any law that conflicts with those laws is null and void. *See* U.S. Const. Art. VI, cl. 2; *McCulloch v. Maryland,* 17 U.S. 316, 427, 4· Wheat. 316, 4 L.Ed. 579 (1819). Whether simply looking at the plain language or going beyond the plain language, the Court thinks that the FCLAA preempts Iowa Code § 142A.6(6). The Court therefore does not address the remaining claims in Plaintiffs' Complaint. The Court will, however, allow the remaining portions of the Iowa Act to stand.

## A. The Presumption Against Preemption

■ The Court recognizes that a presumption against preemption applies here. Although the Supreme Court was somewhat fractured in *Cipollone v. Liggett Group, Inc.,* a majority of the justices did endorse a presumption against preeemption in dealing with the FCLAA. 505 U.S. 504, 523, 532, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); *see also Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (stating that it must start with an assumption that the federal act does not supersede the historic police powers of the states unless that was the clear and manifest purpose of Congress); *Shea v. Esensten,* 208 F.3d 712, 719 (8th Cir.2000) (same). Plaintiffs nevertheless argue that the presumption should not apply in light of the Court's more recent language in *United States v. Locke,* 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000) (interpreting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)) that the presumption against preemption is not "triggered when the State regulates in an area where there has been a history of significant federal presence" and the Court's acknowledgment in *F.D.A. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 137, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) that Congress has legislated in the area of tobacco six times since 1965. The First Circuit dealt with this very argument in *Consolidated Cigar Corp. v. Reilly,* 218 F.3d 30, 38–39 (1st Cir.2000). In that case, the court held that Congress's long-established presence in the field of maritime commerce, dealt with in *Locke,* 529 U.S. at 108, 120 S.Ct. 1135 (noting that in both that case and in *Rice* the Court dealt with a field in which Congress had legislated in since the earliest days of the Republic) was distinguishable from it's relatively recent regulation of the

tobacco industry. *See Consolidated Cigar Corp.*, 218 F.3d at 38–39. This Court agrees with the First Circuit and will also apply the presumption against preemption with full force. *Id.* at 39.

The Court also recognizes the Supreme Court's related admonition in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers' Ins. Co.*, 514 U.S. 645, 655–56, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). In *Traveler's Ins.*, the Court cautioned against adopting an "uncritical literalism" that could lead a court "to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality." *Id.; see also Federation of Advertising Industry Representatives, Inc. v. City of Chicago*, 189 F.3d 633, 636–37 (7th Cir.1999) (relating the warning in *Traveler's Ins.* to a preemption issue with the FCLAA). Yet, despite the strong language warning against a finding of preemption in cases such as this one, it is still possible for Congress to flex the Supremacy Clause.

### B. The Plain Language of the FCLAA

■ Plaintiffs insist that the plain language of the FCLAA dictates that § 142A.6(6) is preempted. The plain language of the FCLAA prohibits a state from imposing any "requirement or prohibition based on smoking and health . . . with respect to the advertising or promotion" of properly labeled cigarettes. 15 U.S.C. § 1334(b). A majority of the justices, including the plurality of the Court, in *Cipollone* seem to have endorsed letting the plain language of the FCLAA control. The plurality stated that they must give effect to the plain language of the FCLAA "unless there is good reason to believe Congress intended the language to have some more restrictive meaning," and that "[i]n this case there is no 'good reason to believe' that Congress meant less than what it said." *Cipollone*, 505 U.S. at 521–22, 112 S.Ct. 2608. Then, in a dissent which Justice Thomas joined, Justice Scalia strongly supported letting the plain language of the FCLAA control. *Id.* at 548, 112 S.Ct. 2608. However, most of the circuit courts that have subsequently dealt with the preemptive scope of the FCLAA have taken a more searching approach, inquiring into the legislative history, stated purpose, and general scheme of the Act. *See Consolidated Cigar Corp. v. Reilly*, 218 F.3d 30 (1st Cir.2000); *Lindsey v. Tacoma–Pierce County Health Dept.*, 195 F.3d 1065 (9th Cir.1999); *Greater New York Metropolitan Food Council, Inc. v. Giuliani*, 195 F.3d 100 (2nd Cir.1999); *Federation of Advertising Industry Representatives, Inc. v. City of Chicago*, 189 F.3d 633 (7th Cir.1999). In support of their approach, they cite cases like *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996), which states that the "ultimate touchstone" in every preemption case is the Congressional purpose and that the Congressional purpose is "primarily discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it." *See Consolidated Cigar Corp.*, 218 F.3d at 38; *Greater New York Metropolitan Food Council*, 195 F.3d at 105. But even if the plain meaning of the FCLAA is not determinative, it is at least instructive.

The FCLAA does not define its use of the word "promotion." Plaintiffs argue though that the plain meaning of the word includes those activities that are prohibited by § 142A.6(6). First, Plaintiffs point to the dictionary definition of the word. Webster's Dictionary defines the word "promotion" as "the act of furthering the growth or development of something; *especially:* the furtherance of the acceptance

and sale of merchandise through advertising, publicity, or discounting."[3] The University of Texas Dictionary of Advertising Terminology defines "promotion" as referring to "[a]ll forms of communication other than advertising that call attention to products and services by adding extra values toward the purchase," including "temporary discounts, allowances, premium offers, coupons, contests, sweepstakes, etc."[4] Whereas the same dictionary defines "advertising" as follows: "While the general public frequently views advertising as encompassing all forms of promotional communication, most advertisers limit it to *paid communications* conveyed by a *mass medium.*"[5]

Second, Plaintiffs point out that in the course of their reporting duties under the FCLAA, both the Secretary of Health, Education, and Welfare (the "Secretary") and the FTC have reported on the types of materials that are prohibited by § 142A.6(6). *See* 15 U.S.C. § 1337. In the introduction of the section entitled, "The Role of Advertising and Promotion in the Marketing of Tobacco Products," the Secretary's report states as follows:

> Promotional activities can take many forms. Promotional expenditures can stimulate retailers to place and display products in ways that will maximize the opportunity for purchase (e.g. supplying retailers with point-of-purchase displays

to locate products at checkout stands.). Coupons reduce the price a consumer pays for products and thereby reduce the consumer's cost-sensitivity, which may be a substantial barrier to making a purchase (McCarthy and Perreault 1993). Premiums (e.g., including a cigarette lighter in the purchase price or even within the actual packaging of a box or carton of cigarettes) reduce cost-sensitivity by increasing (or appearing to increase) the value of a purchase. Free samples do away with cost-sensitivity altogether and actually give consumers an opportunity to try something new (Popper 1986; Davis and Jason 1988). Promotional devices such as these are more likely than advertising alone to lead consumers to purchase a product more than once-a pattern sought by all manufacturers.[6]

In the FTC's reports concerning "current practices and methods of cigarette advertising and *promotion,*" see 15 U.S.C. § 1337(b) (emphasis added), it has included point-of-sale materials, coupons, "multiple pack promotions," and the "distribution of cigarette samples and specialty gift items."[7] The FTC defines "specialty item advertising" as "the practice of branding items such as T-shirts, caps, sunglasses, key chains, calendars, lighters and sporting goods with a brand's logo, and then giving them away or selling them to cus-

---

3. Merriam–Webster's Collegiate Dictionary, at http://www.m-w.com/cgi-bin/dictionary.

4. University of Texas Dictionary of Advertising Terminology, at http://advertising.utexas.edu.

5. *Id.*

6. U.S. Department of Health and Human Services, Preventing Tobacco Use Among Young People: A Report of the Surgeon General (1994), at 159–60.

7. Federal Trade Commission Report to Congress for 1998, Pursuant to the Federal Cigarette Labeling and Advertising Act (2000), at 4–19; Federal Trade Commission Report to Congress for 1997, Pursuant to the Federal Cigarette Labeling and Advertising Act (1999), at 7–10; Federal Trade Commission Report to Congress for 1996, Pursuant to the Federal Cigarette Labeling and Advertising Act (1998), at 5–7; Federal Trade Commission Report to Congress for 1995, Pursuant to the Federal Cigarette Labeling and Advertising Act (1997), at 5 to 9.

tomers."[8] In view of all this, the Court agrees with Plaintiffs, the plain meaning of the FCLAA certainly appears to preempt § 142A.6(6).

### C. Beyond the Plain Language of the FCLAA

Defendants, however, ask the Court to look beyond the plain language of the FCLAA to determine whether it preempts § 142A.6(6). Defendants contend that "[b]y adding the word 'promotion' to describe the activities that were preempted by the federal statute, Congress simply intended to make sure that it was covering the entire field of labeling and advertising and preempting state regulation of all such aspects of communication between the tobacco industry and the general public."[9] They claim that the word "promotion" merely refers to items such as display racks.

In support of its interpretation, Defendants say that *Cipollone,* 505 U.S. at 504, 112 S.Ct. 2608, endorses a narrow reading of the FCLAA preemption provision. In *Cipollone,* the Court was faced with the question of whether certain state common law damage claims against cigarette manufacturers were preempted by the FCLAA. *Id.* at 524–31, 112 S.Ct. 2608. The plurality of the Court went through the claims one by one, looking to some extent at the legislative history and stated purpose of the FCLAA, and held that only the failure to warn claims were preempted in so far as they were based on the lack of additional or more clearly stated warnings. *Id.* It held that the express warranty, intentional fraud, and conspiracy to misrepresent or conceal claims were not preempted. *Id.* at 525–31, 112 S.Ct. 2608. Also, in an opinion

in which he concurred in part and dissented in part, Justice Blackmun stated that he would find that none of the state common law damages claims were preempted, reasoning that any ambiguity should be resolved against Congress. *Id.* at 533, 544, 112 S.Ct. 2608. In fact, in *Medtronic,* the Court as much as said that it "used a 'presumption against the pre-emption of state police power regulations' to support a *narrow interpretation* of such an express command in *Cipollone.*" 518 U.S. at 485, 116 S.Ct. 2240 (quoting *Cipollone,* 505 U.S. at 523, 112 S.Ct. 2608) (emphasis added).

Defendants also state that other circuits have recognized a narrow reading of the FCLAA preemption provision. The First, Second, Fourth, and Seventh Circuits have all held that the mere regulation of the location of advertising is not preempted by the FCLAA. *See Penn Advertising of Baltimore, Inc. v. Mayor and City Council of Baltimore,* 63 F.3d 1318 (4th Cir.1995), *vacated on other grounds by* 518 U.S. 1030, 116 S.Ct. 2575, 135 L.Ed.2d 1090 (1996), *readopted by* 101 F.3d 332 (1996). *Consolidated Cigar Corp. v. Reilly,* 218 F.3d 30 (1st Cir.2000); *Lindsey v. Tacoma–Pierce County Health Dept.,* 195 F.3d 1065 (9th Cir.1999); *Greater New York Metropolitan Food Council, Inc. v. Giuliani,* 195 F.3d 100 (2nd Cir.1999); *Federation of Advertising Industry Representatives, Inc. v. City of Chicago,* 189 F.3d 633 (7th Cir.1999). Defendants point out that each of those cases involved regulations that could have initially appeared to be preempted and yet, at least in the First, Second, and Seventh Circuits, the courts upheld them after a review of the legislative history, stated purpose, and general scheme of the FCLAA. *See Consolidated*

---

8. Federal Trade Commission Report to Congress for 1996, Pursuant to the Federal Cigarette Labeling and Advertising Act (1998), at 7.

9. Memo. of Law in Supp. of Defs.' Mot. for Summ. J. and Resist. to Pls.' Mot. for Partial Summ. J. at 14.

*Cigar Corp.*, 218 F.3d at 39–41; *Greater New York Metropolitan Food Council*, 195 F.3d at 105–09; *Federation of Advertising Industry Representatives*, 189 F.3d at 636–39; *but cf. Lindsey v. Tacoma–Pierce County Health Dept.*, 195 F.3d 1065 (9th Cir.1999) (holding that the legislative history and stated purpose of the FCLAA support the conclusion that location restrictions on advertising are preempted). Defendants note that there is little or no legislative history regarding why the word "promotion" was added to the preemption provision. They note that the stated purpose of the FCLAA does not mention "promotion." *See* 15 U.S.C. § 1331. Finally, they note that the substantive provisions of the FCLAA mandate nothing with respect to promotions. *See* 15 U.S.C. §§ 1331–41. Defendants claim that therefore, following the reasoning of the First, Second, and Seventh Circuits, this Court should find that the activities prohibited by § 142A.6(6) are not preempted either.

Defendants' interpretation of the FCLAA is simply untenable. Defendants' argument that the word "promotion" was added to the preemption provision only to ensure that the FCLAA covered all communications between the tobacco industry and the public relating to labeling and advertising is unsupported. The only thing they can point to in support of it is a discussion under the section title "Advertising" in House Report No. 89–449 about former Governor of New Jersey Robert. B. Meyner's interpretation of the word "advertising" in regard to his efforts to monitor the tobacco industry's compliance with New Jersey's advertising code. The Report relates Governor Meyner's testimo-

ny as follows: "Governor Meyner testified before the committee that he interprets his powers under the code very broadly, and that he interprets the term 'advertising' to include not only material broadcast on radio and television and printed in magazines but also to include the labeling on packages, counter displays, and all other material which can be interpreted as promoting the sale of cigarettes." H.R. Report No. 89–449, at 2353. However, this house report was submitted with regard to the 1965 version of the FCLAA, not the 1969 version. *See* H.R. Report No. 89–449. The FCLAA of 1965 did not include a general ban on advertising regulations like the 1969 version.[10] Moreover, any chance that Congress intended to include the word "promotion" in the FCLAA of 1969 so that it could be sure to capture Governor Meyner's interpretation of "advertising" seems illogical and speculative.

The Court cannot therefore follow the reasoning of the First, Second, and Seventh Circuits and find that the activities prohibited in § 142A.6(6) are not preempted. It is a cardinal rule in statutory construction that a court should not treat any word as superfluous. *See United States v. Talley*, 16 F.3d 972, 975–76 (8th Cir.1994); *Co–Operative Grain & Supply Co. v. Commissioner of Internal Revenue*, 407 F.2d 1158, 1162 (8th Cir.1969). Treating the word "promotion" as superfluous is exactly what the Court would be required to do if it were to accept Defendants' argument though. The only example that Defendants can come up with regarding what "promotion" might include that "advertising" does not, is display racks. But the

---

10. The preemption provision of the FCLAA of 1965 states, in relevant part, as follows:
(a) No statement relating to smoking and health, other than the statement required by section 4 of this Act, shall be required on any cigarette package.

(b) No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.
P.L. 89–92 § 5.

legislative history they cite in support of that distinction could just as easily support the argument that Congress meant the word "advertising" to include things like display racks and "promotion" to mean something else. Therefore, the Court cannot use the legislative history, stated purpose, and general scheme of the FCLAA to reach a conclusion that would most likely mean excising the word "promotion" from the Act.

Moreover, the Court is not entirely convinced that the stated purpose and general scheme of the FCLAA do not conflict with § 142A.6(6). While the thrust of the stated purpose of the FCLAA appears to be an effort to protect the tobacco industry specifically from "diverse, nonuniform, and confusing cigarette labeling and advertising regulations," the FCLAA speaks of a general protection as well. The FCLAA seeks to protect commerce and the national economy to the maximum extent consistent with its policy of warning consumers about the adverse health effects of smoking. *See* 15 U.S.C. § 1331(2). This intent to generally protect the tobacco industry was recognized by the Supreme Court in *F.D.A. v. Brown &. Williamson Tobacco Corp.*, 529 U.S. 120, 138–39, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000):

> Congress ... generally regulated the labeling and advertisement of tobacco products, expressly providing that it is the policy of Congress that 'commerce and the national economy may be ... protected to the maximum extent consistent with' consumers 'be[ing] adequately informed about any adverse health effects.' 15 U.S.C. § 1331. Congress' decisions to regulate labeling and advertising and to adopt the express policy of protecting 'commerce and the national economy ... to the maximum extent' reveal its intent that tobacco products

remain on the market. Indeed, the collective premise of these statutes is that cigarettes and smokeless tobacco will continue to be sold in the United States.

It also appears that the activities prohibited in § 142A.6(6) are encompassed in the general scheme of the FCLAA. The preemption provision is not the only place in the Act where the word "promotion" appears, it also appears in § 1337(b) with respect to the FTC's duty to report to Congress. So even though the FCLAA may not prohibit or require anything regarding promotional activity as far as the tobacco companies are concerned, it does require the FTC to keep Congress apprized of it. Therefore, regardless of whether the Supreme Court endorsed a narrow reading of the FCLAA in *Cipollone*, the Court sees no way around the conclusion that the FCLAA preempts § 142A.6(6).

## D. Severability

■ Having determined that § 142A.6(6) must fall, the Court must decide whether the rest of the Iowa Act should be allowed to stand. Iowa law governs the Court's decision on this issue. *See Russell v. Burris,* 146 F.3d 563, 573 (8th Cir.1998) ("Severability is a matter of state law."). Iowa law says that when the challenged statute does not contain a severability clause, the "presumption is that the statute was meant to stand or fall in its entirety." *State v. Books,* 225 N.W.2d 322, 325 (1975). However, it also says that legislative intent is the determining factor in all cases. *Id.* In *State v. Blyth,* 226 N.W.2d 250, 262 (1975), the court offered the following guideline: "If when the invalid part is stricken, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, or purpose, wholly inde-

pendent of that which was rejected, it must be sustained to that extent...." Under Iowa law then, the focus seems to be on whether the stricken provision and the remaining portions are independent or interdependent. *See id.*

The remaining portions of the Iowa Act are sufficiently independent of § 142A.6(6) to be allowed to stand without it. For the most part, the Iowa Act creates an initiative and a commission to carry out the initiative. *Id.* The initiative itself consists of youth programs, a media, marketing, and communications program, an education program, and an enforcement program. Iowa Code § 142A.7. The commission designed to carry it out is comprised of six persons from health-related nonprofits and one retailer. Iowa Code § 142A.3. The Act also sets the stage for carrying out the initiative via community partnerships. Iowa Code § 142A.8. In sum, the purpose of the Act appears to be to rally the community in an effort to (1) bring about a "reduction of tobacco use by youth and pregnant women, promotion of compliance by minors and retailers with tobacco sales laws and ordinances, and enhancement of the capacity of youth to make healthy choices" and (2) to "foster a social and legal climate in which tobacco use becomes undesirable and unacceptable, in which role models and those who influence youth promote healthy social norms and demonstrate behavior that counteracts the glamorization of tobacco use, and in which tobacco becomes less accessible to youth." Iowa Code § 142A.1. Section 142A.6(6) is tucked into the part of the Act that sets forth the establishment, purpose, and expected results of the initiative and bears virtually no relation to the rest of the Act. The Court will therefore allow the remaining portions of the Iowa Act to stand.

## IV. CONCLUSION

Plaintiff's Motion for Partial Summary Judgment on Preemption (Clerk's No. 5) is granted.

**IT IS SO ORDERED.**